13926

JACKSON v. CITY OF COLUMBIA

(177 S. E., 158)

*Messrs. Mendel L. Smith, C. T. Graydon* and *A. F. Spigner,* for appellant,

*Messrs. Herbert & Dial* and *Paul A. Cooper,* for respondent,

October 23, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought by the appellant as administratrix to recover damages for the alleged wrongful death of her husband, John Melvin Jackson. The case was tried by Judge Townsend in the Court of Common Pleas for Richland County. At the close of the testimony, a motion for nonsuit was made by counsel for appellant, and granted, on the ground that there was no proof of actionable negligence on the part of the city, and on the ground that the vehicle on the street, which it is alleged caused the injuries complained of, which is alleged to have been a street-cleaning vehicle, was not being used in connection with the repairs of the street, or in connection with any defect in the street.

The appeal is from the order granting the nonsuit.

It appears from the complaint that on the day named the deceased, John Melvin Jackson, was, about the hour of 12 o'clock, midnight, going north on Main street in the City of Columbia; that at that time the employees of the city were using a truck on Main Street, which the city was accustomed to use to keep the streets in repair and condition, and for the purpose of picking up trash, garbage, and other refuse on the streets; that the truck was parked, on the night in question, in the street with the motor running, with no lights in the back, in violation of the city ordinances thereabout, with no proper guard, forming an obstruction and dangerous instrumentality, which made the street dangerous and unsafe for normal use and travel; that at the time and place the streets were "improperly lighted and improperly darkened"; that, as decedent was proceeding along Main Street, the car

in which he was riding struck the unlighted and unguarded truck, and he suffered injuries from which he died; that his injuries were due to the negligence, willfulness, recklessness, and wantonness of the defendant, its agents and servants, in the following particulars:

Parking the large and cumbersome truck on a public street and in a dangerous position, and in violation of the law of the City of Columbia; allowing it to be parked with the engine running without any person in or about it; in failing to have it lighted as required by statute law and the ordinance of the city; in failing to have the street properly lighted at the time and place; in failing to have a man in and about the truck to guard it and to warn people approaching it; in allowing the truck to be parked in the middle of the street so as to be a danger and menace to persons lawfully using the street.

The answer, save as to the merely formal parts of the complaint, was a general denial; with the further plea of the defense that plaintiff's intestate contributed to his own death as a proximate cause thereof, without which it would not have occurred, by his own negligence, or that of the driver of the car, with whom he was driving on a joint enterprise, or who was acting as his agent, by failing to keep any lookout whatever.

The action is alleged to be brought under Lord Campbell's Act. An action of the nature of this one cannot be maintained against a municipal corporation, which is an integral part of the sovereignty of the state, unless there be express statutory provision therefor. This right of action was given by the Act of 1892, Vol. 21, St. at Large, p. 91, which is now embraced in the Code of Laws of 1932 as Section 7345; the pertinent provisions of that Act are as follows, including the title:

"An Act Providing for a Right of Action Against a Municipal Corporation for Damages Sustained by Reason

of Defects in the Repair of Streets, Sidewalks and Bridges Within the Limits of Such Municipal Corporation.

"Section 1. Be it enacted by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge or public way, or by reason or defect or mismanagement of any thing under control of the corporation within the limits of any town or city, may recover, in an action against the same, the amount of actual damages sustained by him by reason thereof."

This Act received its first interpretation in the case of *Dunn v. Town of Barnwell,* 43 S. C., 398, 21 S. E., 315, 316, 49 Am. St. Rep., 843, in which the opinion was written by Mr. Chief Justice McIver. The principle was therein laid down that the purpose of the Act was to give a right of action for injuries received in consequence " 'of defects in the repair of streets, sidewalks and bridges.' * * * The term 'mismanagement,' as used in a previous part of the Act, meant mismanagement in making repairs on the streets, so that the corporation should be held liable, not only for neglect in making the repairs on the street, but also for mismanagement of anything under the control of the corporation in making such repairs."

In the year following the rendition of this opinion, a strong line of cases followed in which the opinion in the *Dunn case* was adhered to; but another line also followed which gave the statute a broader construction.

In the case of *Reeves v. City of Easley,* 167 S. C., 231, 166 S. E., 120, 121, all of the cases on both lines of the subject were reviewed, and the principle laid down in the *Dunn case* was approved by the unanimous opinion of this Court. The Court said: "When a statute gives a right of action against the state, county, or city, or other subdivision of the sovereign authority, it is the rule of the law that such

statute must be strictly construed. "This Court has held that an \* \* \* Act \* \* \* in derogation of the sovereign power of the state, must be strictly construed.' *Ancrum v. State Highway Department,* 162 S. C., 507, 161 S. E., 98, 99."

This Court reaffirmed the rule of the *Dunn case* that, in order to recover for injuries received from the mismanagement of some instrumentality under the control of a municipal corporation, the instrumentality must be then used in repairing a defect in the streets of the municipality.

■ What is the evidence offered by plaintiff to show that the truck in this case was being used in repairing the street?

It is alleged that the truck was used "for the purpose of picking up trash, garbage and other refuse on the streets of Columbia." (Complaint folio 4 of the Record.) That the truck was left parked in the street unlighted and unguarded. It appears that plaintiff's intestate was riding in the car of Mr. Pendergrass, which the latter was driving. Mr. Pendergrass, for plaintiff, testified: "That a man came up (Mr. Street). He said it was a city truck and I asked him what it was doing being left in the middle of the street and he said he had just gone over to the hydrant to flush the ditch, or gutter. He said he had left the motor running just a minute until he could go over and open the hydrant to flush the gutter. He said it was a city truck cleaning up the street garbage and débris."

On cross-examination this witness said: "He (Mr. Street) came up just a few minutes after the accident; and told me he had stepped across the street to open the hydrant; to flush the street; to clean up débris on the street."

Mr. Porter, witness for plaintiff, testified: Was formerly city engineer; the truck was used for taking up garbage and débris out of the gutter; to keep the streets clean and remove the garbage. The witness was asked:

"Q. For what purpose were these trucks used—I mean for what purpose was the garbage and stuff removed from the streets? A. Well, the garbage for sanitary reasons and the boxes and débris for safety.

"Q. For safety of who? A. For anybody—vehicles and pedestrians or anyone.   *   *   *

"Q. What effect would it be on the streets if they were not kept clean in that particular? A. Well, if they stood for any length of time the streets would be cluttered up.

"Q. Would it be possible to use them with safety? A. Well, that is problematical—I wouldn't say.

"Q. You wouldn't say it wouldn't be? A. No, sir."

On cross-examination this witness said he was not at the place of the collision that night, and does not know whether "there was any débris particularly on the streets that night." He testified to the custom of the trucks when he was city engineer and in charge of this department to pick up boxes and barrels in which the trash swept up out of stores was placed and any débris the people have thrown out.

"Q. So, when you were there the purpose of these night trucks that went down Main Street was to pick up the boxes or barrels or garbage or trash that the merchants would put out there, and take it and put it into the top of the wagon and also to take the trash that might have blown out of these farrels or boxes? A. That's true."

There is not in the record one word of evidence that on the night in question there were any boxes or barrels or trash or débris which made the street unsafe for proper use or a menace to any one. There is not a syllable of testimony to show that there was a defect in the street which the truck was engaged in repairing. Its use is shown by plaintiff's own witness to be the nightly one of keeping the streets clean and sanitary, and it was then so engaged.

That this is not such use as to make "mismanagement" of the truck ground for action within the purview of the

statute is shown by the case of *Davis v. City of Greenville*, 168 S. C., 476, 167 S. E., 682, 683.

That was an action for damages for injuries alleged to have been suffered by the boy who was struck by a large volume of water which was emitted from a motor-drawn flusher, the property of the city, while engaged in washing off the street. There it was said: "It is needless to rehearse all that was said in the case of *Reeves, supra;* it is sufficient to say that that case lays down the rule that, in order to hold a municipality liable under the provisions of the Act relating to the mismanagement of anything under the control of the municipality, it must be alleged and proved that the instrumentality was then being used in repairing the streets."

From the same case we quote:

"Webster's New International Dictionary gives this definition of 'repair': 'To restore to a sound or good state after decay, injury, delapidation, or partial destruction; as to repair a house, a road, a shoe.'

"This is the ordinary common-sense meaning of the word. and it is only fair to the lawmakers to credit them with the intention to give it that meaning when they enacted the law. In short, the relation in which it is used in the context can leave no doubt that it was so intended."

Black's Law Dictionary (3d Ed.), p. 1531, gives the same definition of the word "repair" as is given from Webster above, and also the following: "The word 'repair' contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed, and thereby to restore it to the condition in which it originally existed as near as may be." Citing authorities.

The appeal is dismissed, and the judgment of the lower Court is affirmed.

MR. JUSTICE STABLER and MESSRS. ACTING ASSOCIATE JUSTICES EUGENE S. BLEASE and W. C. COTHRAN concur.

MR. JUSTICE CARTER dissents.

Mr. Acting Associate Justice Eugene S. Blease (concurring) :

While concurring in the opinion of Mr. Justice Bonham, I wish to make a few observations.

With the greatest respect, of course, for that highly distinguished jurist, Mr. Chief Justice McIver, I never have been quite satisfied with the construction placed by him upon the "enabling statute," relating to the liability of municipal corporations, in the case of *Dunn v. Town of Barnwell,* 43 S. C., 398, 21 S. E., 315, 49 Am. St. Rep., 843, decided in 1895. Therein he construed the Act of 1892 (21 St. at Large, p. 91), incorporated in the Revised Statutes of 1893. as Section 1582 (now Section 7345 of the Code). I think that great Judge paid, perhaps, a little too much attention to the title of the Act, and too little attention to the language of the Act itself.

At the session of the General Assembly of 1892, two Acts, relating to the liability of municipal corporations for damages to persons and property, were enacted, and both were approved by the Governor on the same day, December 24, 1892.

The first Act, No. 40 (21 St. at Large, p. 91), entitled, "An Act Providing for a Right of Action Against a Municipal Corporation for Damages Sustained by Reason of Defects in the Repair of Streets, Sidewalks and Bridges Within the Limits of Such Municipal Corporation," was the one construed in *Dunn v. Town of Barnwell, supra.*

In the *Dunn case* the Court evidently did not have its attention called to Act No. 46 of 1892 (21 St. at Large, p. 95), entitled, "An Act to Provide for and Regulate the Incorporation of Towns in This State of One Thousand or More Inhabitants." Section 31 of that Act contained practically word for word the provisions of Act No. 40 of 1892, construed in the *Dunn case,* as to the liability of municipal corporations for damages to persons and property. The title of Act No. 46 is much broader than the title to Act

No. 40. If the attention of the Court had been called to Act No. 46, I venture to suggest that the construction of the statute given in the *Dunn case* would have been otherwise than that which the Court did give.

At the session of the General Assembly in 1901, there was enacted Act No. 377 (23 St. at Large, p. 648), entitled, "An Act to Provide for the Incorporation of Cities of More Than Five Thousand Inhabitants." Section 22 of that Act (page 657) contained almost the identical language set forth in Section 31 of Act No. 46 and in Act No. 40 of the year 1892, with one notable addition. That addition was a provision in the following language: "Provided, further, that said city shall be liable for all damages done to the property of any citizen thereof or property holder therein by any of the officers, agents or servants under and by virtue of any authority or orders of said City Council."

Evidently, it was the purpose of the Legislature, as to cities containing more than 5,000 population, to alter the effect of the decision in the *Dunn case*. Unfortunately, however, the last-mentioned provision was not incorporated in the Code of 1902, and it does not appear in any of the subsequent Codes. In the Code of 1902, and in the subsequent Codes, there has been carried only the provisions of Act No. 40 of 1892, construed in the *Dunn case,* and those provisions are the statutory law of the state to-day on the subject of the liability of municipal corporations for damages to persons and property.

The apparent conflicts in some of the decisions of our Court may be due to the fact that some of the Judges have at times had in mind the title of Act No. 46 of 1892 and the provisions of Section 31 of that Act (page 102) and the proviso in Section 22 of Act No. 377 of 1901.

Since the last proviso, above quoted, of Act No. 377 of 1901 is not incorporated in the Code, that provision is not now a part of the general statutory law of the state, and the Court cannot now give any effect thereto.

See *City of Greenville v. Pridmore,* 162 S. C., 52, 160 S. E., 144; *State v. Meares, Superintendent,* 148 S. C., 118, 145 S. E., 695.

That the law may be plain and the construction of our statutes consistent, and for the purpose of avoiding confusion, I think it better for the Court to follow the holding of Mr. Justice McIver in the *Dunn case,* which has been adhered to in many decisions thereafter, including, especially, the recent cases of *Reeves v. City of Easley,* 167 S. C., 231, 166 S. E., 120 and *Davis v. City of Greenville,* 168 S. C., 476, 167 S. E., 682. If the General Assembly in the future wishes to make a change in the law, it, of course, has the power to do so.

MR. JUSTICE STABLER concurs.

MR. JUSTICE CARTER (dissenting) :

This action, commenced in the Court of Common Pleas for Richland County, is a suit by Emma Stogner Jackson, administratrix of the estate of John Melvin Jackson, deceased, against the City of Columbia, for the purpose of recovery of damages, in the sum of $50,000.00, for the alleged wrongful death of the said John Melvin Jackson, who, according to the plaintiff's allegations, was killed in an automobile accident when the car in which he was riding with one Pendergrass struck a truck of the City of Columbia which was alleged to have been parked and standing, unlighted and unguarded, on Main Street in said city, about midnight, on the 12th day of October, 1931. The suit, brought under Lord Campbell's Act, is for the benefit of the widow of the deceased, as the sole beneficiary under said Act. Issues being joined, the case was tried at the May, 1933, term of said Court, before his Honor, Judge W. H. Townsend, and a jury, resulting in an order of nonsuit, pursuant to defendant's motion made upon the ground that there was no evidence of negligence for which the City of Columbia would be liable, under the facts and circumstances in the case, and upon the further ground that from all the evidence in the case "it

is apparent that the vehicle on the street, which is alleged to have been a street cleaning vehicle, was not being used in connection with the repair of the street, or in connection with any defect in the street, and, therefore, under all the evidence a nonsuit should be granted."

From the judgment entered, following the granting of nonsuit, the plaintiff, pursuant to due notice, has appealed to this Court, imputing error to his Honor in granting the nonsuit.

For the purpose of an understanding of the questions presented in the appeal, it is necessary to give a brief statement of the facts in the case, as disclosed by the testimony adduced at the trial. In response to plaintiff's allegations, testimony was introduced on the part of the plaintiff tending to show that the said John Melvin Jackson was conductor on a train of the Atlantic Coast Line Railroad Company, and at the time in question was running, as such conductor, from the said City of Columbia, S. C., to the City of Sumter, S. C., and return; that on the night of his death he had arrived at the Gervais Street freight station, about 12:45 a. m., and was going home with his flagman, a Mr. Pendergrass, riding as a passenger in Mr. Pendergrass' car; that, when said car drove into Main Street, leaving Gervais Street, some of the lights on Main Street were off, and, while riding in said car on Main Street, as a passenger therein, the said car was traveling at the rate of about 12 to 15 miles per hour, and, while·thus riding in said car, the car ran into and struck the rear end of a truck standing near the center of said street, resulting in the death of the said John Melvin Jackson; further, that the said truck, which was owned by the City of Columbia, and at the time in question was used by the said city in connection with necessary work of said street, devolved upon the said city, its officers and employees. There was also testimony tending to show that the motor of the truck in question at the time of the alleged collision was left running, while the truck was standing still, near the

middle of the said street, in violation of law, unguarded and improperly lighted, if lighted at all. Further, it may be reasonably inferred from the testimony that the truck in question, at the time involved, was engaged in cleaning up the trash and débris on said street, and that the person in charge of such work and said truck had walked off to the side of said street, leaving the motor of said truck running, in violation of law, near the middle of the said street, unguarded and not properly lighted; and, while the said truck was left standing in said street as aforesaid, the collision occurred, resulting in the death of the deceased. In this connection there was testimony to the effect that the person in charge of the said truck and street work, on the occasion in question, when asked about the truck being left in or near the middle of the said street, as above described, stated that "he had just gone over to the hyrant to flush the ditch or gutter," and, further, it may be inferred from that testimony that the truck was a city truck, used for cleaning up the street, garbage, and débris. There was also testimony to the effect that, by leaving the motor of the truck running while the truck was standing still, the smoke was caused to accumulate at the back of the truck and made it difficult for the truck to be seen by any one approaching from the rear, obscuring any light, if any, the truck might have had on the rear end.

Mr. Porter, an engineer by profession or trade, witness for the plaintiff, testified that he had worked for the City of Columbia as an engineer, that is, as city engineer, and while thus engaged he had supervision of the waterworks department, the streets and garbage departments, and that trucks similar, it appears, to the truck in use on the night of said accident were used in connection with the said work of which he was in charge. This witness further testified, in the course of his examination, in response to questions asked by counsel for the plaintiff, that the garbage was removed for sanitary reasons, and the boxes and débris for

safety. We quote the testimony of this witness, as disclosed by the transcript of record, the following:

"Q. For what purpose were those trucks used—I mean for what purpose was the garbage and stuff removed from the streets? A. Well, the garbage for sanitary reasons and the boxes and débris, which might drop in the street, for safety.

"Q. For safety? A. Yes, sir.

"Q. For safety of who? A. Well, for anybody, vehicles and pedestrians or any one.

"Q. For people traveling in the streets? A. Yes, sir.

"Q. Are they still being used up and down Main Street for the same purpose they were used while you were city engineer? A. Well, I don't know altogether for the same purpose, but from my observation I would say they are.

"Q. Do those trucks still pick up the sweepings that are swept up from the streets? A. They do.

"Q. Now, tell the jury, what effect would it be on the streets if they were not kept clean in that fashion? A. Well, if it stood for any length of time the streets would be cluttered up.

"Q. Would it be possible to use them with safety? A. Well, that is problematical—I wouldn't say.

"Q. You would say it wouldn't be? A. No, sir.

"Q. How many people did you have on these trucks, when you were city engineer? A. There is a superintendent of the street department and a superintendent of the garbage department. I don't remember now how many employees they had, but the total force—well, I don't know—I don't remember.

"Q. But you do know your observation is they are still being used for the same purpose? A. Yes, sir."

Under cross-examination this witness made no material change in his testimony.

It is the holding of this Court, as declared in numerous decisions, that a municipality cannot, in the absence of an

enabling law making it liable, be made to respond in damages for the injury or death of a person. The enabling law depended upon by the plaintiff is Section 7345 of the Code of Laws of this State for 1932, which reads as follows:

"§ 7345. *Causes of Action for Damages from Defects in Streets, Mismanagement, Etc.*—Any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city, may recover, in an action against the same, the amount of actual damages sustained by him by reason thereof. If any such defect in a street, causeway or bridge existed before such injury or damage occurred, such damage shall not be recovered by the person so injured if his load exceed the ordinary weight: Provided, The said corporation shall not be liable unless such defect was occasioned by its neglect or mismanagement: Provided, further, Such person has not in any way brought about any such injury or damage by his or her own negligent act or negligently contributed thereto."

Was the death of John Melvin Jackson caused on account of a defect in the street involved, or by reason of a defect or mismanagement of anything under control of the City of Columbia, and was such defect occasioned by the neglect or mismanagement of the City of Columbia? Appellant states the following as the questions involved in the appeal:

"1. Does an unguarded, unlighted truck left in the middle of the street by employees of a city constitute a defect in the street?

"2. Is a truck which is used in the daytime in the street department and at night to remove the trash, boxes and débris from the street engaged in the repair of the street?

"3. Does this case fall under the principles of *Duncan v. Greenville County,* 71 S. C., 170, 50 S. E., 776?

When viewed in the light of the testimony adduced on the trial of the case, these questions pointedly arise in connection with the appeal.

The respondent suggests the following questions as the accurate questions to be answered in passing upon the appeal:

"1. Does a truck which a city employee has momentarily left standing in the street while he went to the curb to open a hydrant constitute a defect in the street?

"2. Is cleaning a street the same as repairing a street and would a vehicle used in cleaning the street come within the terms of the municipality statute?

"3. Does the case fall under the statute making municipality liable for defects in the street or for mismanagement of anything under the control of the corporation in making repairs thereto?"

As to question No. 1, suggested by respondent, whether a truck which a city employee momentarily left standing in the street while he went to the curb to open a hydrant constitutes a defect in the street must be determined and answered in the light of all of the surrounding facts and circumstances. In what part of the street was the truck left? Was it left in that part of the street where vehicles, such as automobiles, were accustomed to be driven, and was it left in such condition that it could be readily seen by those driving in that locality? Or was the street in that locality or the truck so poorly lighted that the truck could not be seen in time to prevent a collision with other vehicles coming up from the rear of the said truck? These questions are proper questions to be considered and answered in connection with the question propounded by respondent, and, in view of the testimony adduced on the trial of the case, in our opinion, should have been submitted to the jury.

As to respondent's question No. 2, in our opinion, cleaning a street is not necessarily the same as repairing a street. But an employee may be employed in the work of repairing a street as well as cleaning a street, at the same time; and we

can see no good reason why the truck in question could not be considered as having been used at the time in question in connection with the work of repairing the street as well as in cleaning the street, and come within the terms of the municipal liability statute. In this connection, we may add, ordinarily when we speak of cleaning the street we have in mind sweeping up and taking up the dirt and light trash that may have accumulated in the street; or, perhaps, we may also have in mind removing the filthy things that have fallen into the street; and, when we speak of repairing the street, we have in mind doing something to make the street safe for travel, for vehicles as well as for pedestrians. We may have in mind the repair of a bridge or filling up a hole in the street, but a street does not have to have a broken bridge or a hole in it to be unsafe for travelers. The leaving of boxes or débris in the street may make the street unsafe for travel and constitute a defect in the street, and a truck used for the purpose or in connection with the work of removing boxes and débris from the street may under certain circumstances and conditions constitute a vehicle used within the terms of the municipal liability statute. We may further add that sometimes very small things left in a street constitute a defect in the street and make it unsafe for travel. Take, for instance, the skin or peel of fruit, apple, orange, or banana, or the rind of melons. Such things would not only make the street unclean and filthy but actually dangerous, for those traveling in vehicles as well as pedestrians, and constitue a defect in the street; and the removal of such defect would, in effect, amount to repairing the street. At least the Court could not, as a matter of law, hold that the removal of such things from the street did not in effect amount to repairing the street. The removal of fallen trees or fallen buildings from the street would come under the same head. Now it is true there was no evidence that the peels of fruits, fallen trees, or buildings lay in the street in question, but I give the example for the purpose of showing that a defect in the

street cannot be confined to a broken bridge or hole in the ground.

As to the third question presented by respondent, this question has been answered by what I have stated in answering the first and second questions, except I wish to add, however, that I consider it an issue for the jury to say, under the testimony and surrounding facts and circumstances of the case, whether or not the leaving of the truck in question in the street mentioned constituted, or amounted to, mismanagement of a thing under the control of the City of Columbia in making repairs to said street.

I shall not herein discuss or refer to the many cases in which this Court has considered the statute involved in this appeal, for the reason that it would serve no useful purpose, though I have made a study of all cases to which our attention has been called in connection with the case. Respondent relies upon the decision in the case of *Dunn v. Town of Barnwell*, 43 S. C., 401, 21 S. E., 315, 49 Am. St. Rep., 843, and cases following in which a similar state of facts was involved. Respondent also calls special attention to the case of *Reeves v. City of Easley*, 167 S. C., 231, 166 S. E., 120. For the purpose of showing the main question involved in the *Reeves case* we quote the following statement from the syllabus of that case: "Fireman struck by police car following fire truck could not recover against city under statute authorizing action for injury from defect in street."

As stated by respondent, this Court rendered a decision which was unanimous in that case. But, as shown by the above-quoted statement from the syllabus in that case, the ·facts in that case are not at all similar to the facts in the case at bar, and the decision in that case is not in conflict with the decision in the case at bar. The principle involved in the *Reeves case* is the same as declared in the case of *Oswald v. City of Orangeburg*, 154 S. C., 105, 151 S. E., 230. In our opinion, the rule declared in the case of *Duncan v. Green-*

*ville County,* 71 S. C., 170, 50 S. E., 776, should govern in the case at bar.

For the foregoing reasons, in my opinion, the trial Judge erred in granting defendant's motion for a nonsuit. I think the issues should have been submitted to the jury. Whether the death of the deceased was caused as contended by the plaintiff or in the manner contended by the defendant is a question for the jury.

I therefore think that the judgment of the lower Court should be reversed and the case remanded for a new trial.