23358

Karole K. JENSEN, as Administratrix of the Estate of Michael Clark, Deceased, Respondent v. ANDERSON COUNTY DEPARTMENT OF SOCIAL SERVICES, and Susan Straup and Charie Ann Jenkins, in their official capacities as social workers with the Anderson County Department of Social Services, Petitioners.

(403 S.E. (2d) 615)

Supreme Court

196

*F. Dean Rainey, Jr.,* of *Rainey, Britton, Gibbes & Clarkson, P.A.,* Greenville, *for petitioner Charie Ann Jenkins.*

*Charles E. Carpenter, Jr.* and *George C. Beighley,* both of *Richardson, Plowden, Grier & Howser,* Columbia, *for petitioner Susan Straup.*

*Charles L. Henshaw, Jr.* and *James A. Merritt, Jr.,* both of *Furr and Henshaw, P.A.,* Columbia, *for respondent.*

Heard June 1, 1990.

Decided March 4, 1991; Rehearing Denied April 10, 1991.

TOAL, Justice:

This is a wrongful death and survival action initially brought against the South Carolina Department of Social Services, its director and board and against the Anderson County Department of Social Services, its director, its board and against an Anderson County Department of So-

cial Services (DSS) social worker and her supervisor for failing to properly investigate a report of child abuse.[1] The sole issue on appeal is whether such alleged negligence may give rise to a private cause of action under the Child Protection Act, S.C. Code Ann. § 20-7-480 *et seq.* We find that it may and therefore affirm the Court of Appeals' decision in *Jensen v. S.C. Department of Social Services*, 297 S.C. 323, 377 S.E. (2d) 102 (Ct. App. 1988).

This action seeks recovery for the wrongful death of a three year old child, Michael Clark, alleging that defendants' failure to properly investigate a report of child abuse involving Michael's brother resulted in Michael's death.

On February 28, 1980, the local DSS office received a report of abuse of Shane Clark from his school teacher. Shane was Michael's brother. The teacher suspected that Wayne Drawdy, the mother's boyfriend, was physically abusing the children. Charie Ann Jenkins (Jenkins), a social worker, spoke with Shane at school. She noted that Shane had unexplained bruises on his face and body and expressed a fear of Wayne Drawdy.

The Child Protection Act requires social workers to conduct "an appropriate and thorough" investigation to determine whether a report of abuse is "indicated" or "unfounded." S.C. Code Ann. § 20-7-650. If abuse is indicated, the social worker is required to petition the Family Court for the removal of the child from the home. S.C. Code Ann. § 20-7-736.

The evidence in this record suggests that Jenkins did not gather other information for the file nor did she locate the family. In May 1980, Jenkins and her supervisor, Susan Straup, closed the file concluding that the report was unfounded. On June 23, 1980, Drawdy beat Michael Clark to death.

Karole K. Jensen, the administratrix of Michael's estate, brought this action against Straup and Jenkins and all DSS officials within their chain of command. All of the defendants have been dismissed with the exception of Anderson County DSS, Straup and Jenkins.

The Court of Appeals found that the Act imposes upon the local child protection agency and its social workers a special

---

[1] This action has been recaptioned to properly reflect the parties now remaining before this Court.

duty to investigate and intervene in cases involving child abuse and that a violation of that duty may give rise to a private cause of action. The Court of Appeals also noted that the determination of whether Jenkins and Straup are shielded by official immunity depends upon whether they breached a ministerial or a discretionary duty in carrying out the investigation. Such a determination requires a showing of competent evidence and therefore the Court of Appeals remanded the case so that the facts could be developed to resolve this issue. We affirm and accordingly remand the case for a determination on this issue.

## DISCUSSION

Generally, there is no common law duty to act. An affirmative legal duty, however, may be created by statute, contract relationship, status, property interest, or some other special circumstance. Many statutes impose a duty on public officials to perform certain acts. Generally, however, such officials enjoy an immunity from a private cause of action under the public duty rule. This rule holds that public officials are generally not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than anyone individually.

The public duty rule was originally adopted by this Court in *Parker v. Brown*, 195 S.C. 35, 10 S.E. (2d) 625 (1940).

> The law necessarily grants certain discretion to its officers in handling the public business. In one instance it may be wise for a public officer to pursue one course, in another instance, another course. Those charged with protecting the public interest should view that interest as supreme, should consider what is best for the public, and should be free at all times to prosecute the course that appears to be in the public interest. . . . It is well settled that an individual has no right of action against a public officer for breach of a duty owing to the public only, even though such individual be specially injured thereby. *Where a duty is owing to the public only, an officer is not liable to an individual who may have been incidentally injured by his failure to perform it.*

(Emphasis added.)

An exception to this general rule of non-liability exists ■ when a duty is owed to individuals rather than the public only. Our Court of Appeals has developed a test comprised of six elements to determine when such a "special duty" exists:

(1) an essential purpose of the statute is to protect against a particular kind of harm;

(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;

(3) the class of persons the statute intends to protect is identifiable before the fact;

(4) the plaintiff is a person within the protected class;

(5) he public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and

(6) he officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Rayfield v. South Carolina Dept. of Corrections,* 297 S.C. 95, 374 S.E. (2d) 910 (Ct. App. 1988) cert. denied 298 S.C. 204, 379 S.E. (2d) 133 (1989).

The Court of Appeals utilized this test in this case and found that the child abuse statutes impose a special duty on DSS social workers which may give rise to a private cause of action. The Court of Appeals found that:

The essential purpose of these sections is to protect abused children when their cases have been reported to DSS officials. Such children comprise a clearly identifiable class; Michael Clark was plainly a person within the class. These sections impose on the local child protection agency and its social workers a specific duty to investigate and to intervene in cases involving children like Michael. Jenkins received a report that children were being abused in the Clark home. She knew from personal observation that Shane Clark had visible physical injuries which pointed to child beating. In the circumstances, she could foresee that serious injury was likely to come to the Clark children if there were no intervention to protect them. Upon receipt

of the report, Jenkins had full authority to investigate and to petition the family court for removal of the children from the home to prevent further injury.

*Jensen,* 297 S.C. at 331, 377 S.E. (2d) at 105-106.

DSS challenges this special duty test on the grounds ■ that it does not include consideration of legislative intent and a finding of a special relationship or circumstances. We disagree.

It is the opinion of this Court that the special duty analysis is in itself an attempt to determine legislative intent. This six step analysis determines when the legislature has been sufficiently specific in detailing both a duty on behalf of a particular government officer or employee and the identity of a particular class of persons in a particular situation to which the special duty is owed there must be a remedy.[2]

A comparison of the statutes in this case and those involved in *Whitworth v. Fast Fare Markets of South Carolina, Inc.,* 289 S.C. 418, 338 S.E. (2d) 155 (1985), illustrate how the special duty test aids in the determination of legislative intent. In *Whitworth,* this Court held that no private cause of action was created by the violation of statutes which made it a criminal offense to knowingly and willfully encourage the delinquency of a minor and to sell cigarettes to minors under age 18. This Court found that the statutes were primarily for the protec-

---

[2] It should be noted that although the *Rayfield* special duty analysis is applicable to this case, subsequent cases controlled by the South Carolina Tort Claims Act, enacted after this suit was brought, may require a slightly different analysis. Section 15-78-40 of the Act provides:

> The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein.

In establishing the exceptions to this waiver of sovereign immunity, § 15-78-60(25) provides:

> The governmental entity is not liable for a loss resulting from responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner.

This provision, which is not applicable here, may shield the defendants from liability unless the violation of the special duty was found to have been done in a grossly negligent manner.

tion of the public and not for the protection of an identifiable and particular class of persons.

Although the special duty test was not utilized in that case, application of the six factor analysis results in the same conclusion. The statutes are contained in a section entitled "Offenses Against Public Policy" and as the Court found, their purpose is primarily the protection of the public. More importantly, no duty is imposed on a "specific public officer." The statutes involved are criminal statutes directed at third parties forbidding them to behave in certain ways towards juveniles. Therefore, in the absence of a duty imposed on a government employee or official to protect a specific group of persons against a particular harm, no "special duty" would arise.

In regard to the second challenge set forth by DSS, the finding of a special relationship or special circumstances is implicit in the six step analysis. The test requires a finding that the statute imposes on a specific public officer a duty to guard against a specific harm and that the class of persons to be protected, of which the plaintiff is a member, is identifiable before the fact. By imposing this duty, the statute creates a "special relationship" between the public officer and plaintiff. *Rayfield*, 297 S.C. at 106, 374 S.E. (2d) 910. The fact that a special relationship is required to support a private cause of action is evidenced by a comparison of the facts in *Rayfield*, *supra*, and this case.

In *Rayfield*, the plaintiff sued the Department of Corrections for paroling a prisoner who murdered two people within hours of his release. The court found that the purpose of the statutes was to assign responsibility for the management of the state agencies and to provide for the general keeping of records. The purpose was not to protect a specific group of people against violent crimes. There was no relationship with the victims, the prisoner or the Department. The prisoner did not know the victims, so there was no way to identify them before the fact or to know of their need for protection.

In contrast, the purpose of the child abuse statutes is to provide protection for children from being abused. The statutes mandate investigation and intervention to remove endangered children when abuse has been reported. Therefore, the specific class is identifiable before the fact. When the

abuse was reported in this case, a relationship was established between the Clark children and DSS.

Therefore, we take this opportunity to adopt the six ■ step special duty analysis espoused in *Rayfield* as an exception to the public duty rule. In applying that test to the facts of this case, we find that the Act imposes a special duty on the local child protection agency and its social workers to investigate and intervene in cases where child abuse has been reported.[3]

Even though we have found the existence of a special duty, the inquiry does not end. As was found by the Court of Appeals, it must still be determined whether the alleged negligent conduct occurred during the performance of a ministerial or a discretionary duty.

Generally, a government official may not be held liable ■ for the negligent performance of a discretionary duty.

Immunity for discretionary acts may be traced to *Parker, supra* and was discussed at length in *Long v. Seabrook*, 260 S.C. 562, 197 S.E. (2d) 659 (1979).

> The duties of public officials are in general classified as ministerial and discretionary. They are also referred to as being ministerial and quasi-judicial. The character of an official's public duties is determined by the nature of the act performed. The duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts. Quasi-judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. . . . In a tort suit against a public official whose duties are discretionary, it must be shown that in the performance or non-performance of those duties the public official was guilty of corruption, or bad faith, or influenced by malicious motives, before a recovery can be had.

---

[3] We note that other jurisdictions are split on the issue of whether the negligence of a social worker in failing to investigate a report of child abuse may give rise to a private cause of action. While no other state has utilized an identical analysis, several other jurisdictions have reached the same result. *See e.g., Brodie v. Summit County Children Services Board*, 51 Ohio St. (3d) 112, 554 N.E. (2d) 1301 (1990); *Coleman v. Cooper*, 89 N.C. App. 188, 366 S.E. (2d) 2 (Ct. App. 1988).

More recently, the Court of Appeals explained that a government agency's immunity is contingent on proof that the agency, faced with alternatives, actually weighed competing considerations and made a conscious decision to act or not to act. *Niver v. South Carolina Department of Highways & Public Transportation,* — S.C. —, 395 S.E. (2d) 728 (Ct. App. 1990). The issue in *Niver* was whether the Highway Department was liable for failing to install striping or signs on a particular portion of a road. Even though two statutes allowed the Department to exercise discretion regarding the placement of markings, the Court of Appeals found that this by itself did not constitute evidence that the Department actually made a decision and exercised its discretion.

In the case at bar, the Court of Appeals made the following findings regarding the character of the duties owed by DSS. The duty to conduct a "thorough" investigation before a decision is taken to close a file is a ministerial duty mandated by the statute. The manner in which the investigation is conducted is one of discretion, unless the investigation is so incomplete that it could not be found to be "thorough." Ordinarily, the decision to classify a report of abuse as "unfounded" and close the file is a discretionary act because it involves the application of judgment to the particular facts. If, however, the file was closed because the investigation was incomplete and there were not enough facts upon which to make an informed decision, the social workers would not be entitled to official immunity.

We agree with these findings and with the conclusion that sufficient evidence was not presented upon which a decision may be made. Therefore, on remand it must be determined whether a "thorough" investigation was made and whether the decision to close the file was an exercise of discretion. DSS must present evidence that competing choices were considered and that they made a conscious decision based upon the facts to close the file.

For the reasons discussed above, the Court of Appeals decision is AFFIRMED. Accordingly, the summary judgment in favor of Anderson County Department of Social Services, and in favor of defendants Straup and Jenkins is reversed and the case is REMANDED to the circuit court for further proceed-

ings consistent with this opinion and that of the Court of Appeals.[4]

GREGORY, C.J., and HARWELL, CHANDLER, and FINNEY, JJ., concur.

---

[4] It should be noted that this action was commenced after sovereign immunity in South Carolina was abrogated by this Court in *McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985) and less than a month before the General Assembly adopted the South Carolina Tort Claims Act. S.C. Code Ann. §§ 15-78-10 et seq. (Supp. 1989). Under the Tort Claims Act, sovereign immunity is abrogated, *inter alia*, as to ministerial acts by governmental entities. The Act recognizes that government agencies generally operate through their employees. Thus, when an agency is sued because of the alleged tort of an employee acting within the scope of his or her employment, the Tort Claims Act provides that only the agency shall be named as a party. S.C. Code Ann. § 15-78-70(c). Governmental employees who commit torts while acting in their official capacity are immune from personal liability unless their conduct constitutes actual fraud, actual malice, intent to harm or a crime of moral turpitude. § 15-78-70(a) and (b). Honoring the spirit of the Tort Claims Act, albeit inapplicable here, plaintiff has named the social workers but sued them only in their official capacities.