23970

Chilton L. ADKINS, as Personal Representative of the Estate of Brandy L.
Adkins, Appellant v. Mark H. VARN, James Franklin Gilbert, and
county of Greenville, Defendants, of whom County of Greenville is Re-
spondent.

(439 S.E. (2d) 822)

Supreme Court

*Eugene C. Covington, Jr.*, Greenville, *for appellant.*

*V. Clark Price*, Greenville, *for respondent.*

Heard Nov. 3, 1993.

Decided Dec. 20, 1993.

TOAL, Justice:

This appeal arises from a granting of summary judgment in favor of the county government in action for wrongful death. We affirm.

## FACTS

The facts of this appeal are not in dispute. On February 8, 1992, plaintiff's decedent, Brandy L. Adkins, a thirteen-year-old girl, was fatally injured while riding her bicycle around her home in Greenville County. She was chased by several vicious dogs into a public street where she was struck and killed by an automobile. Prior to this occurrence, several local residents had complained about these dogs to county animal control personnel. One witness stated that he personally called the County of Greenville at least five times immediately before the incident to complain that these dogs were roaming unrestrained and making unprovoked attacks.

Mr. Adkins alleged in his complaint for wrongful death that the County made no efforts to respond to the citizens' grievances, and as a result, the dogs were able to chase Brandy into the path of the oncoming automobile. To support this allegation, Mr. Adkins submitted the affidavits of several complaining parties.

In its answer, County denied that it negligently failed to enforce its ordinance. Additionally, County filed a motion to dismiss the complaint under S.C. Code Ann. § 15-78-60(4) (Supp. 1992)[1] on the grounds that the S.C. Tort Claims Act exempts it from liability for failure to enforce an ordinance. Plaintiff contended that his affidavits created an issue of fact as to whether the County was negligent in not picking up these dogs. On September 24, 1992, the trial judge issued his order granting the County's motion, finding that even if Mr. Adkins'

---

[1] This statute lists the exceptions to the state's waiver of sovereign immunity. Predating the present controversy, subsection (4) was adopted in 1986 as a subsection to the original version of the statute.

allegations were true, the County is immune from suit. It is from this order that Mr. Adkins appeals.

## ISSUES
Mr. Adkins raises three issues on appeal:

1. Whether the trial court erred in construing § 15-78-60(4) as granting the County an exemption from liability for its failure to enforce the county animal control ordinance.

2. Whether the trial court erred in finding that all of the allegations in the complaint were predicated on the County's failure to enforce the county animal control ordinance; and

3. Whether the trial court erred in finding that the county animal control ordinance did not create a special duty of care towards individual members of the general public.

## LAW ANALYSIS

### Statutory Construction

In the first instance, we are asked to review the trial court's granting of summary judgment to the County based on the immunity provided in S.C. Code Ann. § 15-78-60(4). Long-standing as a legal doctrine, sovereign immunity historically acted to protect a governmental entity from all liability for loss in a negligence action. In *McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985), we abolished sovereign immunity, and as a result, the General Assembly enacted the South Carolina Torts Claim Act, codified at S.C. Ann. §§ 15-78-10, *et seq.* (Supp. 1992). Balancing the interests of the state against the interests of a tort victim, the General Assembly, in S.C. Code Ann. §15-78-60, provided thirty-one exceptions where the state was exempted from liability.

Section 15-78-60(4) provides that a governmental entity is not liable for loss resulting from:

[a]doption, enforcement or compliance with any law or *failure to* adopt or *enforce* any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies. ... [Emphasis added.]

In Section 15-78-20, the General Assembly gave the courts guidance on the construction of the comprehensive act:

> The provisions of this chapter establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the State.

A basic rule of statutory construction is that the words must be given their plain and ordinary meaning without resort to a subtle or forced construction which limits or expands the statute's operation. *Berkeley v. Outen,* — S.C. —, 426 S.E. (2d) 760 (1993); *First Baptist Church v. City of Mauldin,* — S.C. —, 417 S.E. (2d) 592 (1992). Where a statute contains terms which are clear and unambiguous, a court must apply those terms according to their literal meaning. *Citizens for Lee County, Inc. v. Lee County,* 308 S.C. 23, 416 S.E. (2d) 641 (1992).

Greenville County adopted Section 3.1 of Ordinance No. 731, as amended by Ordinance No. 2130 dated June 5, 1990. The relevant section outlining the duties of animal control officers provides:

> *3.1 Powers, Authority, and Duties.* The officers designated by Greenville County with the enforcement of animal control shall have the authority to enforce all applicable laws concerning animal control as set forth by this Ordinance or other laws and such additional procedures, duties and responsibilities as the county shall establish. The county at it's [sic] discretion may contract any portion or all of the enforcement and administration of this Ordinance it may deem appropriate. However, nothing herein shall abridge or limit the right and duty of local law enforcement authorities to enforce the provisions of this or any other law concerning animal control to the degree which their training and expertise may allow them to do so.

The present facts establish that the County had notice that several vicious dogs were at large in the neighborhood. The facts also show that the County, for whatever reason, did not enforce the ordinance on these particular animals. It is undisputed that the County is a governmental entity within the

meaning of the South Carolina Torts Claim Act, and therefore, is subject to the provisions of S.C. Code Ann. § 15-78-60(4).

The provisions of Section 15-78-60(4) are clear and unambiguous on their face, and are not subject to judicial interpretation. The statute clearly exempts from liability any loss resulting from the failure to enforce an ordinance; therefore, the County is immune from suit for any loss as a result of their nonenforcement of the animal control ordinance.

### Sufficiency of the Complaint

Mr. Adkins next argues that the trial court erred in dismissing the complaint on the basis that it was predicated on the County's failure to enforce the county animal control ordinance. The amended complaint filed by Mr. Adkins alleges that the county was negligent, negligent *per se*, grossly negligent, reckless, willful and wanton in failing to enforce the animal control ordinance; in failing to respond to numerous complaints; and in failing to require compliance with the ordinance by the dogs' owner.

Mr. Adkins argues public policy for the proposition that the government should be held accountable as any other citizen. Mr. Adkins opines that it is hard to imagine any action of government which is not the enforcement or carrying out of the law. He supports this argument by making a distinction between the failure to enforce an ordinance and the failure to respond to complaints or requiring a citizen's compliance with a law. This is a distinction without a difference. Under either theory, the gravamen of the complaint is the County's failure to enforce the ordinance. Thus, the acts which are alleged in the complaint are completely intertwined in the enforcement or nonenforcement of the ordinance.

### Special Duty of Care

Mr. Adkins' last argument is that the trial court erred in finding that the county animal control ordinance did not create a special duty of care towards individual members of the general public.

Prior to the adoption of the South Carolina Tort Claims Act, the Court of Appeals developed a six-element test to determine when an ordinance created a special duty. *Rayfield v. South Carolina Dept. of Corrections*, 297 S.C. 95, 374 S.E. (2d)

910 (Ct. App. 1988) *cert. denied*, 298 S.C. 204, 379 S.E. (2d) 133 (1989). We affirmatively adopted the *Rayfield* test in *Bellamy v. Brown*, 305 S.C. 291, 408 S.E. (2d) 219 (1991), where we stated that a special duty exists when:

> (1) an essential purpose of the statute is to protect against a particular kind of harm;
>
> (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;
>
> (3) the class of persons the statute intends to protect is identifiable before the fact;
>
> (4) the plaintiff is a person within the protected class;
>
> (5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and
>
> (6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Id.* at 294, 408 S.E. (2d) at 221.

Moreover, in *Jensen v. Anderson County DSS*, 304 S.C. 195, 403 S.E. (2d) 615 (1991), we held that where there is a duty to the general public only, an officer is not liable to an individual who is incidentally injured by the officer's failure to perform that duty. In *Jensen,* we also recognized that the *Rayfield* analysis may have a different implication in cases arising after the adoption of the South Carolina Tort Claims Act. *Id.* at 201 n. 2, 403 S.E. (2d) at 618 n. 2. However, assuming *arguendo* that the ordinance did create a special duty, it would still not rise to a level which would abrogate the plain meaning of § 15-78-60(4).

Therefore, the ordinance would have to create a special duty which reaches beyond the general public. The terms used in the Animal Control Ordinance are general, and they allow for a discretionary delegation of the duty to a non-government contractor. There is no identification of a particular class of potential victims, and the terms do not identify a particular kind of harm. It would be difficult to read a special duty into the language of the Animal Control Ordinance, and there does not appear to be a legislative intent to create such a duty.

Accordingly, for the reasons stated, the trial court's granting of a summary judgment is affirmed.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.