635 S.E.2d 631

**Judy VAUGHAN, Appellant,**

v.

**TOWN OF LYMAN, Respondent.**

**No. 26210.**

Supreme Court of South Carolina.

Heard April 18, 2006.
Decided Sept. 25, 2006.

438

Matthew W. Christian, of Christian, Moorehead & Davis, of Greenville, for appellant.

William McBee Smith, of Smith & Haskell Law Firm, of Spartanburg, for respondent.

Chief Justice TOAL.

Judy Vaughan (Vaughan) brought an action against the Town of Lyman (Lyman) alleging it was negligent in failing to maintain the sidewalks located within its jurisdiction causing her injury. Lyman made a motion for summary judgment, which the trial court granted. Vaughan appealed the trial court's order. This Court certified the appeal for review from the court of appeals pursuant to Rule 204(b), SCACR. We affirm in part, reverse in part, and remand for trial.

### FACTUAL/PROCEDURAL BACKGROUND

In October of 1999 Vaughan tripped on the Lawrence Street sidewalk in Lyman, which had become broken over time by

overgrown tree roots. As a result of the fall, Vaughan injured her hands, right knee, back, and spine. In November of 1999, Vaughan filed a claim against Lyman. Vaughan filed this suit in September of 2002.

Lyman argues that it is not responsible for Vaughan's injuries because it does not own, control, or maintain the sidewalk where the injury occurred. Lyman made a motion for summary judgment and the trial court granted Lyman's motion. Vaughan appealed and raises the following issues for this Court's review:

I. Did the lower court err in finding that S.C.Code Ann. § 5–27–120 (1976) did not create a duty for Lyman to keep the sidewalks within the town in good repair?

II. Did the lower court err in finding that no common law duty exists for Lyman to maintain the sidewalk?

III. Did the lower court err in finding that Lyman did not owe a duty to Vaughan based on Lyman's voluntary undertaking of the repair and maintenance of the streets and sidewalks within the town?

IV. Did the lower court err in excluding certain material from the record on appeal?

## STANDARD OF REVIEW

In reviewing the grant of summary judgment, this Court applies the same standard that governs the trial court under Rule 56, SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *South Carolina Elec. & Gas Co. v. Town of Awendaw,* 359 S.C. 29, 34, 596 S.E.2d 482, 485 (2004) (quoting *Osborne v. Adams,* 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001)). On appeal, all ambiguities, conclusions, and inferences arising in and from the evidence must be viewed in a light most favorable to the non-moving party. *Id.*

## LAW/ANALYSIS

### I. Statutory duty

Vaughan argues the trial court erred in finding that

S.C.Code Ann. § 5–27–120 [1] did not create a duty for Lyman to keep the sidewalks within the town in good repair. We disagree.

■ Generally, the common law does not impose any duty to act. *Miller v. City of Camden,* 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997). However, an affirmative duty to act may be created by statute, contract, status, property interest, or some other special circumstance. *Jensen v. Anderson County Dep't of Soc. Serv.,* 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991).

■ Although a statute may impose a duty to act upon a public official, the official may also be immune from a private right of action under the public duty rule. "This rule holds that public officials are generally not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than anyone individually." *Steinke v. South Carolina Dep't of Labor, Licensing, and Regulation,* 336 S.C. 373, 388, 520 S.E.2d 142, 149 (1999).

■ The public duty rule's general principle of non-liability, however, is not absolute. Under the well established "special duty" exception, a public official may be held liable to an individual for the breach of a statutory duty when:

(1) an essential purpose of the statute is to protect against a particular kind of harm;

(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;

(3) the class of persons the statute intends to protect is identifiable before the fact;

(4) the plaintiff is a person within the protected class;

---

1. The South Carolina Code provides:

The city or town council of any city or town of over one thousand inhabitants shall keep in good repair all the streets, ways and bridges within the limits of the city or town and for such purpose it is invested with all the powers, rights and privileges within the limits of such city or town that are given to the governing bodies of the several counties of this State as to the public roads.
S.C.Code Ann. § 5–27–120 (1976).

(5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and

(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Jensen,* 304 S.C. at 200, 403 S.E.2d at 617.

■■ The public duty rule is a rule of statutory construction which aids the court in determining whether the legislature intended to create a private right of action for a statute's breach. *Arthurs ex rel. Estate of Munn v. Aiken County,* 346 S.C. 97, 104, 551 S.E.2d 579, 582 (2001). It is a negative defense which denies the existence of a duty of care owed to the individual. *Id.* The public duty rule should not be confused with the affirmative defense of immunity. *Id.* Therefore, the dispositive issue is not whether § 27–5–120 creates a duty, but rather whether the statute was intended to provide an individual a private right of action thereunder.

Our Court has long recognized that a municipality has a duty to maintain its streets. *Morris v. Mills,* 121 S.C. 200, 113 S.E. 632, 634 (1922). However, prior to the abolition of sovereign immunity, the liability of a municipality for the breach of the duty was grounded in a waiver statute. *See* S.C.Code Ann. § 5–7–70 (1976) *repealed by* Act No. 463, 1986 S.C. Acts 3001; S.C.Code Ann. § 47–36 (1962); S.C.Code Ann. § 7345 (1942); S.C.Code Ann. § 1972 (1912); 21 St. at Large 91 (1892 Act. No. 40). This waiver statute created the private right of action under which an individual could pursue a tort claim against a municipality for breach of the duty. The waiver statute served as a companion statute to the previous versions of § 27–5–120. After this Court abolished sovereign immunity, the legislature repealed the waiver statute and enacted the South Carolina Tort Claims Act. Act No. 463, 1986 S.C. Acts 3001. This Court continues to acknowledge the duty of a municipality to maintain its streets; however, we no longer observe the statutory basis for a private right of action. Instead, liability is now imposed through the waiver provisions of the Tort Claims Act. *See* S.C.Code Ann. 15–78–10, *et seq.* (2005).

■ In the instant case, Vaughan argues that the town of Lyman owes a "special duty" under § 27–5–120. The terms of the statute clearly define a duty owed to the general public. However, Vaughan has failed to demonstrate that the statute meets the requirements of a "special duty" as outlined above. We find that the statute does not have an identifiable class of persons intended to be protected by the statute beyond the classification of the general public. The intention of the statute to protect the general public is insufficient to amount to an "identifiable class" as required to find a "special duty."

Therefore, we hold that while § 27–5–120 clearly defines the duty to the general public of a municipality to maintain its streets, the public duty rule precludes a private right of action based solely on this statute. Accordingly, the lower court did not err in granting summary judgment to Lyman on the statutory cause of action because § 27–5–120 does not create a "special duty" upon which an individual may base a tort action against a municipality.

## II. Common Law Duty

Vaughan argues the trial court erred in finding that no common law duty existed for Lyman to maintain the sidewalk on Lawrence Street. We agree.

Generally, the common law does not impose any duty to act. *Miller*, 329 S.C. at 314, 494 S.E.2d at 815. However, this Court has acknowledged that "[t]he general rule in this country is that municipalities which have full and complete control over the streets and highways within their corporate limits are liable in damages for injuries sustained in consequence of their failure to use reasonable care to keep them in a reasonably safe condition for public travel." *Terrell v. City of Orangeburg*, 176 S.C. 518, 518–19, 180 S.E. 670, 672 (1935) (emphasis added) *overruled on other grounds by McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985) (abrogating sovereign immunity). Additionally, this Court has interpreted this duty to extend, not only to those streets, ways, and bridges owned and maintained by the municipality, but also to *those under the control* of the municipality.[2] *Dolan*, 233 S.C. at 4, 103 S.E.2d at 330; *Terrell*, 176 S.C. at 519, 180 S.E. at 672.

---

2. Both parties concede that under S.C.Code Ann. § 56–5–480, the definition of street includes the sidewalk.

The lower court found that Lyman did not owe a duty to Vaughan because Lyman did not own, maintain, or control the sidewalk where the incident occurred. The court based its conclusion on the affidavit of Robert Fogel and exhibits submitted by Lyman with its motion for summary judgment. The affidavit explains that Lawrence Street is owned by Spartanburg County and that the State Highway Department maintains the street. The exhibits include deeds showing the transfer of Lawrence Street to Spartanburg County, as well as photographs of the signs on Lawrence Street indicating its designation as part of the State Highway System.

In opposition to Lyman's motion, Vaughan relied on the deposition testimony of Robert Fogel, Lynda Hurteau, and Robert Phillips to show that Lyman exercised at least some control over Lawrence Street. Vaughan asserts that Lyman assumed general maintenance of the streets and sidewalks by removing trees and filling potholes. Vaughan also alleges that Lyman exercised control over the streets by fielding citizen complaints about the streets and sidewalks. Additionally, Vaughan asserts that the town minutes contain several references to affirmative actions by Lyman to correct the problems related to the town's sidewalks.

We find that there is a genuine issue of fact regarding whether Lyman exercised any control over the streets in the town, specifically Lawrence Street. Although the record contains evidence tending to show ownership belonging to Spartanburg County, that evidence is not dispositive in this case. Both Lyman and the lower court ignore the fact that ownership and maintenance of the sidewalk by another entity does not prevent Lyman from also maintaining or controlling the same sidewalk. See S.C.Code Ann. § 57–5–140 (2005) (stating that ownership of a highway by the state "shall not prevent a municipality from undertaking any improvements or performing any maintenance work on state highways in addition to what the department is able to undertake"). Therefore, when the evidence is viewed in a light most favorable to Vaughan, more than one inference may be drawn. Accordingly, we find that the lower court erred in granting summary judgment to Lyman regarding Lyman's common law duty to maintain the sidewalk on Lawrence Street.

Lyman contends that even if Lyman has a duty to maintain its streets, ways, and bridges in a safe condition, Lyman nonetheless has immunity under the South Carolina Tort Claims Act (Tort Claims Act).

The Tort Claims Act provides that "the State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages contained herein." S.C.Code Ann. § 15–78–40 (2005). Balancing the interests of the state against the interests of a tort victim, the General Assembly, in S.C.Code Ann. 15–78–60, provided thirty-one exceptions whereby the state was exempted from liability. There is only one exception to the waiver of immunity contained in the Tort Claims Act regarding street maintenance. The exception provides that a governmental entity is not liable for a loss resulting from:

absence, condition, or malfunction of any sign, signal, warning device, illumination device, guardrail, or median barrier unless the absence, condition, or malfunction is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice. Governmental entities are not liable for the removal or destruction of signs, signals, warning devices, guardrails, or median barriers by third parties except on failure of the political subdivision to correct them within a reasonable time after actual or constructive notice. Nothing in this item gives rise to liability arising from a failure of any governmental entity to initially place any of the above signs, signals, warning devices, guardrails, or median barriers when the failure is the result of a discretionary act of the governmental entity. The signs, signals, warning devices, guardrails, or median barriers referred to in this item are those used in connection with hazards normally connected with the use of public ways and do not apply to the duty to warn of special conditions such as excavations, dredging, or public way construction. Governmental entities are not liable for the design of highways and other public ways. Governmental entities are not liable for loss on public ways under construction when the entity is protected by an

indemnity bond. *Governmental entities responsible for maintaining highways, roads, streets, causeways, bridges, or other public ways are not liable for loss arising out of a defect or a condition in, on, under, or overhanging a highway, road, street, causeway, bridge, or other public way caused by a third party unless the defect or condition is not corrected by the particular governmental entity responsible for the maintenance within a reasonable time after actual or constructive notice.*

S.C.Code Ann. § 15–78–60(15) (2005) (emphasis added).

 Lyman's reliance on this exception is misplaced. This exception does not place any limitation on a municipality's liability for failing to maintain the streets, ways and bridges within its control. Further, an essential phrase in the exception is "caused by a third party." Because the defect in the sidewalk was not caused by a third party, the exception provided by the Tort Claims Act does not apply here. However, even if the defect in the sidewalk was caused by a third party, Lyman ignores the final words of the exception which read, "unless the defect or condition is not corrected by the particular governmental entity responsible for the maintenance within a reasonable time after actual or constructive notice." Lyman's Mayor, Robert Fogel, testified to knowledge of the defect for at least ten years. Therefore, the exception to the waiver of immunity provided in § 15–78–60(15) does not provide immunity to Lyman in this case.

### III. Voluntary Undertaking

Vaughan argues the trial court erred in finding that Lyman did not owe a duty to Vaughan based on Lyman's voluntary undertaking of the repair and maintenance of both Lawrence Street and other streets within the town. We agree.

 While there is generally no duty to act under the common law, a duty to use due care may arise where an act is voluntarily undertaken. *Russell v. City of Columbia,* 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). "The question of whether such a duty arises in a given case may depend on the existence of particular facts. Where there are factual issues regarding whether the defendant was in fact a volunteer, the existence of a duty becomes a mixed question of law and fact to be

resolved by the fact finder." *Miller,* 329 S.C. at 314, 494 S.E.2d at 815. Additionally, "nothing prevents a municipality from undertaking any improvements or performing any maintenance work on state highways in addition to what the department is able to undertake. . . ." S.C.Code Ann. § 57-5-140 (2005).

Our court of appeals has addressed a similar issue in *Bryant v. City of North Charleston,* 304 S.C. 123, 403 S.E.2d 159 (1991). In that case, Bryant sued the city alleging she was injured when she fell into a hole on the sidewalk. The court affirmed the jury verdict in favor of Bryant finding that North Charleston owed her a duty because the city voluntarily undertook the maintenance of the area. *Id.* at 127, 403 S.E.2d at 161. The court based this holding on the fact that the city placed a barricade at the site of the accident, and additionally considered the testimony of the Superintendent of Public Works that he periodically inspected the streets and sidewalks, and that his office often managed the complaints about the sidewalks despite his claim that the streets were state maintained. *Id.* The court looked at all of the evidence in finding that the city assumed the duty of maintaining the street in a safe condition. *Id.*

In this case, the lower court found that there was no evidence that Lyman ever voluntarily undertook to repair, control, or maintain the sidewalk on Lawrence Street. This finding was primarily based on evidence of ownership of Lawrence Street by Spartanburg County and the State's authority over the street as a result of including it in the State Highway System.

Vaughan presented contrary evidence, including references to sidewalk maintenance in the town minutes and town ordinances regulating the sidewalks. Vaughan also presented deposition testimony showing that Lyman was aware of the hazardous condition of Lawrence Street for a substantial period of time without reporting the condition to any other authority, had previously handled complaints from town residents about the sidewalks, and removed hazardous tree roots disrupting the sidewalks.

We hold that this issue was inappropriately decided on summary judgment. There is a genuine issue of fact

regarding whether Lyman undertook the duty of maintaining city streets, even though all city streets were not owned by Lyman. The lower court's reliance on factual allegations of ownership is not determinative of whether Lyman voluntarily undertook the duty to maintain the town's streets and sidewalks. Instead, the factual issues regarding whether the defendant did in fact voluntarily undertake the maintenance of the town's sidewalks, including Lawrence Street, is a mixed question of law and fact which should be resolved by the fact finder. Additionally, the evidence is susceptible to more than one reasonable inference, and therefore should be submitted to the jury. *Quesinberry v. Rouppasong,* 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998).

Accordingly, the lower court erred in granting Lyman summary judgment on the issue of whether Lyman voluntarily undertook the maintenance and control of the town's streets and sidewalks, including Lawrence Street.

## IV. Record on Appeal

Vaughan argues the trial court erred in determining the materials to be included in the Record on Appeal. Because we reverse the lower court's grant of summary judgment and remand the case for trial, we decline to address this issue. *See I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 423, 526 S.E.2d 716, 725 (2000) (holding that the court need not address additional issues if it is not necessary to the resolution of the case).

### CONCLUSION

For the foregoing reasons, the lower court did not err in granting summary judgment to Lyman regarding statutory duty. However, the lower court erred in granting summary judgment to Lyman on the issue of common law duty because there is a genuine issue of fact regarding whether Lyman exercised control over the Lawrence Street sidewalk. Additionally, the lower court erred in granting Lyman summary judgment on the issue of voluntary undertaking because there is a genuine issue of material fact concerning whether Lyman

voluntarily undertook to maintain the streets within its jurisdiction. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES concurring:

The circuit court granted the Town of Lyman summary judgment in this action brought by Appellant Vaughan in which she alleged the town negligently maintained a sidewalk located within the municipality's boundaries. As explained below, I concur in the majority's decision to reverse and remand, but write separately to explain how I reach this conclusion.

"A plaintiff alleging negligence on the part of a governmental actor or entity may rely either upon a duty created by statute or one founded on the common law." *Arthurs v. Aiken County*, 346 S.C. 97, 103, 551 S.E.2d 579, 582 (2001). As explained below, I would find only a common law duty.

In 1892 the General Assembly passed an act titled "An act providing for a right of action against a municipal corporation for damage sustained by reason of defects in the repair of streets, sidewalks and bridges within the limits of said municipal corporation." 21 St. at Large 91 (1892 Act. No. 40). This act, effectively waived municipal sovereign immunity.[3]

Although the Court never undertook to specifically define the common law duty owed by a town to travelers on its sidewalks, it cited with approval to this statement:

The general rule in this country is that municipalities which have full and complete control over the streets and highways within their corporate limits are liable in damages for injuries sustained in consequence of their failure to use reasonable care to keep them in a reasonably safe condition for public travel. 13 R.C.L. 310.

---

**3.** *See Reeves v. City of Easley,* 167 S.C. 231, 166 S.E. 120 (1932); *see also Jackson v. City of Columbia,* 174 S.C. 208, 177 S.E. 158 (1934).

*Heath v. Town of Darlington,* 175 S.C. 27, 29, 177 S.E. 894(1934).

The *Heath* Court was careful to note that, "of course, the statute law of each state controls the matter," thereby emphasizing that municipal liability for sidewalk defects was governed by the waiver statute.

This waiver statute was recodified several times, last appearing as S.C.Code Ann. § 57–5–1810 (1976). Section 57–5–1810 was repealed by the 1986 Act [4] which created the South Carolina Tort Claims Act. S.C.Code Ann. §§ 15–78–10 *et seq.* (2005 and Supp. 2005). The Tort Claims Act (TCA) does not create liability but rather removes the bar of sovereign immunity to the extent permitted by the Act. *Arthurs v. Aiken County, supra.*

*Heath* acknowledged a municipal common law duty, breach of which gave rise to liability only by virtue of the waiver status. In my opinion, the enactment of the TCA and the concomitant repeal of the waiver statute effectively restored liability for a municipality's breach of its duty to use reasonable care to keep streets and highways within its corporate limits, over which it has full and complete control, in a reasonably safe condition for public travel. I therefore agree with the majority to the extent it holds that summary judgment was improperly granted to Lyman on the common law duty theory as there are genuine issues of material fact whether Lyman exercised a sufficient degree of control over the Lawrence Street sidewalk to give rise to this common law duty. If such a duty is found, then the circuit court must consider Lyman's TCA defenses.

In addition, the majority holds that summary judgment is inappropriate because there is some evidence that Lyman voluntarily undertook to repair and maintain streets and sidewalks within the town's municipal boundaries, and was aware that the Lawrence Street sidewalk was in disrepair. I agree with the trial court that there is simply no evidence in this record that the town had ever undertaken any repairs or maintenance of the Lawrence Street sidewalk. There is, however, some evidence that town employees repaired a side-

---

4. 1986 Act No. 463.

walk on Groce Street using materials supplied by the Department of Transportation. Assuming the town volunteered to undertake repairs on Groce Street, this one time act did not impose upon Lyman an obligation to volunteer to fix other sidewalks and streets. Rather, the decision to volunteer merely obligated the town to use due care in performing the Groce Street repairs. *Miller v. City of Camden,* 329 S.C. 310, 494 S.E.2d 813 (1997); *see also Bryant v. City of North Charleston,* 304 S.C. 123, 403 S.E.2d 159 (Ct.App.1991)("and the evidence that the City placed the barricade at the site of the accident, is evidence that the City assumed the duty to maintain the sidewalk in question"). I would therefore affirm the grant of summary judgment to Lyman on the voluntary undertaking theory.

I would reverse the circuit court order granting Lyman summary judgment because I would find that there is a material question of fact whether Lyman breached a common law duty to Vaughan. In light of this disposition, I find it unnecessary to address Vaughan's contention that the appellate record was wrongly settled. Since this issue is raised by the appellant as a ground for reversal, and not by the respondent as an additional ground upon which the circuit court can be affirmed, *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000), is inapposite. Accordingly, while I agree with the majority's conclusion that it is unnecessary to address this appellate issue, I base my decision on the general proposition that an appellate court need not address issues not necessary to its decision. *E.g., Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 518 S.E.2d 591 (1999).