709 S.E.2d 536

**L. Paul TRASK, Jr., Personally, and as Next of Kin and as the Duly Appointed Personal Representative of the Estate of L. Paul Trask, III, deceased; and Meredith C. Trask, Appellants,**

v.

**BEAUFORT COUNTY; Curtis M. Copeland in His Official Capacity as Coroner of Beaufort County; Judy R. Copeland, as Personal Representative of the Estate of Curtis M. Copeland; and Copeland Company of Beaufort, LLC, Respondents.**

No. 4799.

Court of Appeals of South Carolina.

Heard Oct. 6, 2010.

Decided March 2, 2011.

Rehearing Denied June 3, 2011.

Stephen P. Groves, Thomas S. Tisdale, Jr., and Jeffrey S. Tibbals, all of Charleston, for Appellants.

Andrew F. Lindemann, of Columbia; and Marshall H. Waldron, Jr., of Beaufort; for Respondents.

FEW, C.J.

The primary issue in this appeal is whether various statutes governing coroners and crematory operators give rise to private rights of action for civil damages. We agree with the circuit court that they do not, and affirm. We also affirm the circuit court's ruling granting summary judgment for the defendants for spoliation of evidence and intentional infliction of emotional distress.

## I. Facts

On November 21, 2005, Paul Trask, III, a twenty-year-old, consumed beer at his parents' home in Beaufort.[1] Shortly before midnight Paul drove his father's car to a Hess gas station named Xpress Lane on Boundary Street. The gas station attendant sold Paul two twenty-four-ounce cans of beer without verifying his age. Paul Trask, Jr. described the store video as showing his son "going into the Xpress Lane store and immediately going in, going to the bathroom, pretty clear he had been drinking beer, coming out, he seems steady, but we know he's been drinking beer." Paul consumed the beer he purchased from Xpress Lane while driving approximately twenty-two miles to Fripp Island, but was turned away at the security gate. After driving almost four miles away from Fripp Island, Paul lost control of the car, ran off the road, and collided with large pine trees. The car caught on fire and Paul died from the injuries he sustained in the accident, either the impact, fire, or a combination.

On May 22, 2006, Mr. Trask and his wife filed a wrongful death and survival action against Hess Corporation and Xpress Lane, Inc., which we refer to as the Xpress Lane suit. The Trasks alleged Paul's death "was the proximate result of the alleged negligence of [Hess and Xpress Lane], in several particulars, including: the negligent sale of alcohol to a minor."[2] They claimed the beers Xpress Lane sold to Paul "were the beers that caused his intoxication." Hess and Xpress Lane agreed to pay the Trasks $750,000 to settle the case before trial. As required by law, the Trasks requested the circuit court approve the settlement, which it did on January 9, 2008. However, Mr. Trask later testified "that it was worth more than $750,000" and explained, "we were only able to negotiate a very partial settlement in the Xpress Lane case because we had no definitive toxicology results to prove

---

1. We recite the facts, derived primarily from the complaint and Mr. Trask's deposition, in the light most favorable to the Trasks. *See Nelson v. Piggly Wiggly Cent., Inc.*, 390 S.C. 382, 388, 701 S.E.2d 776, 779 (Ct.App.2010) (noting in a summary judgment case "the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party").

2. This quotation is from the "Petition for Approval of Settlement" in the Xpress Lane suit.

... that Paul was intoxicated.... And so I would say that caused great damage to the Xpress Lane suit."

In this action the Trasks have sued Beaufort County and Curtis Copeland,[3] both in his official capacity as the coroner of Beaufort County and in his individual capacity as a crematory operator. They seek damages for the reduced settlement value of the Xpress Lane suit along with damages for emotional harm. The Trasks contend various statutes create duties owed to them which Copeland breached individually and officially. This case is troubling because Copeland did violate at least some of the statutes, and conducted himself in a manner we believe was inappropriate. We hold, however, that the law does not provide a remedy for this conduct in the form of civil damages.

Shortly after the accident occurred, Copeland went to the scene. At around 1:00 a.m. on November 22, after he learned who owned the car, Copeland drove to the Trasks' home to inform them of the accident and death. When Copeland arrived at their home, he did not know who was killed in the accident; he knew only that the car belonged to Mr. Trask. Once the Trasks determined Paul was the only family member not at home, they realized he had been the driver. Later that day family and friends of the Trasks gathered at Mr. Trask's mother's home. Copeland went there around noon to discuss the funeral arrangements. In addition to being the county coroner, Copeland also owned Copeland Company of Beaufort, LLC, which owns and operates Copeland Funeral Home and Coastal Cremation Services. At the gathering, the Trasks told Copeland they wanted Paul's body cremated and signed the cremation authorization form. Although they signed the form sometime between noon and one o'clock, Copeland instructed them to write the time as 9:15 a.m. The following day Coastal Cremation Services cremated Paul's body.

The Trasks contend two statements made by Copeland caused them emotional distress. First, when Copeland was leaving the Trasks' home after telling them about the accident, Mrs. Trask asked him if he planned to perform an autopsy on

---

3. Mr. Copeland passed away after oral argument. Judy R. Copeland, the personal representative of his estate, has been substituted for him in his individual capacity.

Paul's body. Copeland responded there was no need to perform an autopsy because "the cause of death is obvious." Second, a few months later the Trasks asked Copeland how badly Paul's body was burned in the accident, to which he responded, "you couldn't tell if the body was black, white, or Mexican."

The Trasks allege Copeland, as coroner, was required, but failed, to positively identify the body in the car as their son, to conduct an autopsy, and to prepare a toxicology report on the body. They claim that because Copeland individually cremated the body without conducting a toxicology test officially as coroner, the resulting lack of knowledge of Paul's blood alcohol level "made it difficult, if not impossible, for the Trasks to establish and prove otherwise valid claims against the Xpress Lane and Hess Corporation" and forced them to settle for less money.

The Trasks filed this action on April 11, 2007, with claims for negligence and negligent supervision and training against Beaufort County and Copeland officially; for negligent spoliation of evidence against Beaufort County; for negligence and intentional or negligent spoliation of evidence against Copeland individually and Copeland Company; and for intentional infliction of emotional distress against Copeland individually.[4] The Trasks moved for partial summary judgment based on liability. All Respondents filed motions for summary judgment. The trial court filed its order on January 2, 2009, granting summary judgment for Respondents. The Trasks appeal the entire order.

## II. Determining the Existence of a Private Right of Action

██ In a negligence cause of action, it is the plaintiff's burden to establish that a duty of care is owed to him by the defendant. *See McKnight v. S.C. Dep't of Corr.*, 385 S.C. 380, 390–91, 684 S.E.2d 566, 571 (Ct.App.2009) ("An essential element in a negligence cause of action is the existence of a legal

---

4. In their complaint, the Trasks sought damages for wrongful death and survival actions. Because the Trasks conceded they were not alleging a wrongful death or survival action against Respondents, we do not address that claim.

duty of care owed by the defendant to the plaintiff. Without such a duty, a plaintiff cannot establish negligence.") (internal quotation marks and citation omitted); *Chastain v. Hiltabidle,* 381 S.C. 508, 519, 673 S.E.2d 826, 832 (Ct.App.2009) ("If no duty exists, the defendant is entitled to judgment as a matter of law."). Though the common law generally does not impose a duty to act, a statute may create an affirmative duty owed to a plaintiff. *Vaughan v. Town of Lyman,* 370 S.C. 436, 441, 635 S.E.2d 631, 634 (2006).

■ In *Rayfield v. South Carolina Department of Corrections,* 297 S.C. 95, 103, 374 S.E.2d 910, 914 (Ct.App.1988), *cert. denied,* 298 S.C. 204, 379 S.E.2d 133 (1989), this court set forth the analysis to apply when determining whether a statute creates a duty whose breach allows for a private right of action:

> In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect.

If the plaintiff demonstrates these two elements, he has established the first element of a negligence claim—a duty owed to him by the defendant. 297 S.C. at 103, 374 S.E.2d at 915.

■■ However, when the statute at issue creates or defines the duties of a public official, the public duty rule applies. 297 S.C. at 105, 374 S.E.2d at 915. " 'This rule holds that public officials are generally not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than anyone individually.' " *Vaughan,* 370 S.C. at 441, 635 S.E.2d at 634 (quoting *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation,* 336 S.C. 373, 388, 520 S.E.2d 142, 149 (1999)). The public duty rule represents a presumption that such a statute "has the essential purpose of providing for the structure and operation of the government or of securing the general welfare and safety of the public," and thus does not satisfy the elements of the two-part *Rayfield* test. 297 S.C. at 105, 374 S.E.2d at 915.

■ The presumption may be overcome when the statute creates a "special duty" to the plaintiff. 297 S.C. at 106, 374 S.E.2d at 916. In *Rayfield*, this court stated:

A special duty exists if: (1) an essential purpose of the statute is to protect against a particular kind of harm; (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not to cause that harm; (3) the class of persons the statute intends to protect is identifiable before the fact; (4) the plaintiff is a person within the protected class; (5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and (6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Id.; see also Vaughan,* 370 S.C. at 441, 635 S.E.2d at 634 (referring to the six-part *Rayfield* test as "the well established 'special duty' exception"); *Jensen v. Anderson Cnty. Dep't of Soc. Servs.,* 304 S.C. 195, 203, 403 S.E.2d 615, 619 (1991) (adopting the six-part *Rayfield* test and calling it an "exception to the public duty rule"). If a special duty is found to exist after analyzing a statute under this test, courts can be sure the Legislature intended that a plaintiff within the protected class injured by a public official's breach of the duty have a private right of action against the official. 304 S.C. at 201, 403 S.E.2d at 618; *see Vaughan,* 370 S.C. at 442, 635 S.E.2d at 634 ("The public duty rule is a rule of statutory construction which aids the court in determining whether the legislature intended to create a private right of action. . . . [T]he dispositive issue is . . . whether the statute was intended to provide . . . a private right of action. . . .").

We must analyze the one statute alleged to have been violated by Copeland individually under the general two-part test and those alleged to have been violated by Copeland officially under the special duty exception to the public duty rule.

### A. Section 16–17–600 Does Not Create a Duty Owed by Copeland Individually and Copeland Company to the Trasks

■ The only allegation of negligence against Copeland individually and Copeland Company is that they breached a

statutory duty contained in section 16–17–600 of the South Carolina Code (Supp.2010). The section provides:

> (A) It is unlawful for a person willfully and knowingly, and without proper legal authority to: (1) destroy or damage the remains of a deceased human being; . . . .
>
> A person violating the provisions of subsection (A) is guilty of a felony . . . .
>
> A crematory operator is neither civilly nor criminally liable for cremating a body which (1) has been incorrectly identified by the funeral director, coroner, medical examiner, or person authorized by law to bring the deceased to the crematory; or (2) the funeral director has obtained invalid authorization to cremate.

§ 16–17–600(A).[5] The Trasks contend this statute creates an actionable duty under the two-part *Rayfield* test. Specifically, they argue the statute's essential purpose "is to ensure dead bodies are not destroyed without proper authority." Even if that is the essential purpose, however, it is not the harm the Trasks claim they suffered. At oral argument, the Trasks' counsel stated the harm they suffered was a loss of settlement value of the Xpress Lane suit because Paul's body was no longer available. Additionally, Mr. Trask stated in his deposition: "Mr. Copeland performed an illegal cremation on my son's body, which had the effect of destroying any opportunity to, number one, know for certain whether or not it was our son, Paul,[6] number two, the actual cause of his death, whether it was the crash itself or whether he burned to death. We have been denied the toxicology results as a result of the illegal cremation . . . ." Therefore, the harm they claim to have suffered is that Paul's body was no longer available for an autopsy and a toxicology test.

---

5. Subsections (B) and (C) prohibit actions of theft, destruction, vandalism, or desecration on burial grounds or in a graveyard. S.C.Code Ann. § 16–17–600(B)–(C) (Supp.2010).

6. In several causes of action, the Trasks claimed damages for uncertainty as to whether Paul is dead because his body was never "positively identified." However, the Trasks later conceded the body from the accident was their son. Mr. Trask stated: "I acknowledge that my son is dead."

The essential purpose of section 16–17–600 is not to preserve a body as evidence for a civil action. Accordingly, the Trasks fail to meet the first element of the two-part *Rayfield* test. The Trasks argue, however, that the statute's specific reference to a crematory operator's immunity for civil liability demonstrates the Legislature intended for its violation to serve as the basis for civil liability. We disagree. Section 16–17–600 is a criminal statute which provides only for criminal sanctions. *See Dorman v. Aiken Commcns., Inc.,* 303 S.C. 63, 67, 398 S.E.2d 687, 688–89 (1990) (refusing to find a private right of action for "a criminal statute which provides only for criminal sanctions" because "[t]he primary consideration in deciding whether a private cause of action should be implied under a criminal statute is legislative intent"). We find section 16–17–600 does not create a duty of due care owed by Copeland or Copeland Company to the Trasks, and therefore they do not have a private right of action for its breach.[7]

### B. No Duties Exist as to the Negligence Claims Against Copeland Officially

The Trasks allege the following statutory duties were breached by Copeland officially: (1) to perform an autopsy to ascertain the cause of death pursuant to section 17–7–10 of the South Carolina Code (2003); (2) to perform a toxicology test of the victim of a motor vehicle accident pursuant to section 17–7–80 of the South Carolina Code (2003); and (3) to take certain steps pursuant to sections 17–5–570(B) and –590 of the South Carolina Code (2003 & Supp.2010), which are required when a body cannot be identified. Copeland pled the public duty rule as a defense to these claims. We agree with the trial court that none of these statutes satisfy the elements of the six-part *Rayfield* test, and thus no special duty exists under any of them and the Trasks have no private rights of action.

First, the Trasks allege section 17–7–10 creates a special duty. It states: "The coroner of the county in which a

---

7. Because we find section 16–17–600 created no duty owed by Copeland to the Trasks, we do not reach the issue of whether the coroner could be immune from liability under the Safe Cremation Act. S.C.Code Ann. §§ 32–8–300 to –385 (2007 & Supp.2010).

body is found dead ... shall order an autopsy or post-mortem examination to be conducted to ascertain the cause of death." § 17–7–10. The essential purpose of the statute is "to ascertain the cause of death," The "particular kind of harm" the Trasks claim to have suffered is that an autopsy would have provided evidence for the Xpress Lane suit, and they were not satisfied with the level of detail in the coroner's explanation of the cause of death. Mr. Trask testified an autopsy "would have confirmed the results of a toxicology examination, would have determined the actual cause of death, whether it be the crash itself or by the fire." The essential purpose of the statute is neither to provide evidence for a civil lawsuit nor to ensure that the family of a deceased person is given its desired level of detail regarding the cause of death.[8] Accordingly, the Trasks' negligence claim against Copeland officially under section 17–7–10 is barred by the public duty rule.

■ Second, the Trasks allege section 17–7–80 creates a special duty. Title 17 is labeled "Criminal Procedures," and section 17–7–80 states:

Every coroner ... shall examine the body within eight hours of death of any driver and any pedestrian, sixteen years old or older, who dies within four hours of a motor vehicle accident ..., and take or cause to have taken by a qualified person such blood or other fluids of the victim as are necessary to a determination of the presence and percentages of alcohol or drugs. Such blood or other fluids shall be forwarded to the South Carolina Law Enforcement Division within five days after the accident in accordance with procedures established by the Law Enforcement Division.

The Trasks argue the essential purpose of the section "is to protect those who may perish in a motor vehicle accident, as well as their survivors, their estates, and their heirs, and equally importantly, to accurately ascertain the cause of the decedent's death." They contend if Copeland had taken a toxicology sample, they "would have known what effect alcohol

---

8. "Cause of death" is a defined term and "refers to the agent that has directly or indirectly resulted in a death." S.C.Code Ann. § 17–5–5(2) (2003). In this case, the Coroner's Report states the "Manner of Death" is "Accident" and the "Cause of Death" is "Multiple Injuries Extreme."

had on Paul's ability to drive, whether it likely impaired his driving, and whether it significantly contributed to his death." We do not believe the essential purpose of the statute is to protect against this "particular kind of harm." Rather, because the statute requires the toxicology sample be sent to the South Carolina Law Enforcement Division, we find the purpose of the statute is one of law enforcement. Therefore, any benefit or injury to the Trasks from its performance or nonperformance in determining whether alcohol played a role in their son's death is incidental to its essential purpose. The Trasks' negligence claim against Copeland officially under section 17–7–80 is also barred by the public duty rule.

Third, and finally, the Trasks allege sections 17–5–570(B) and 17–5–590 create a special duty when a body is not identifiable. Because the Trasks concede that Paul died in the accident, we need not address this further. Even under their own theory, they are not within the protected class: families of unidentifiable deceased persons. Accordingly, the Trasks' claims based on these statutory duties are barred by the public duty rule.

### III. Third Party Spoliation of Evidence

The Trasks also allege a third party spoliation of evidence cause of action. In *Austin v. Beaufort County Sheriff's Office*, 377 S.C. 31, 36, 659 S.E.2d 122, 124 (2008), the supreme court refused to adopt the tort of third party evidence spoliation. However, it stated, "we decline to address whether we would, under other factual circumstances, adopt the tort." *Id.* The supreme court then listed the elements of negligent and intentional third party spoliation as stated in *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560, 569–70, 573 (2003). *Austin*, 377 S.C. at 34–35, 659 S.E.2d at 123–24. As the supreme court did in *Austin*, we find the Trasks fail to meet those elements. The Trasks have not presented any evidence that Copeland or Beaufort County had knowledge two days after Paul's death of a potential civil action against Hess Corporation and Xpress Lane, or that Paul's body would be considered evidence in such a lawsuit. More importantly, the Trasks authorized the cremation of Paul's body. They also failed to show it was possible to obtain a toxicology test, and did not show how the results of that test would be vital to

their ability to prevail in a civil action. The circuit court correctly granted summary judgment as to this claim.

## IV. Intentional Infliction of Emotional Distress

The second category of damages the Trasks claim from Copeland's conduct is emotional harm. They allege Copeland is liable for intentional infliction of emotional distress for the two statements he made to the Trasks. The statements were made in response to questions from the Trasks about the performance of an autopsy and the details of the accident. These are questions properly addressed to a coroner, not a funeral home owner. Under the Tort Claims Act, a coroner is immune from suit for "the intentional infliction of emotional harm." S.C.Code Ann. § 15–78–50 (2005) ("Any person who may suffer a *loss* proximately caused by a tort of the State, an agency, a political subdivision, or a governmental entity, and its employee acting within the scope of his official duty may file a claim as hereinafter provided.") (emphasis added); § 15–78–30 (2005) (" 'Loss' ... does not include the intentional infliction of emotional harm."). We agree with the trial court that the Trasks cannot "circumvent the bar of sovereign immunity by raising alleged acts by Copeland acting as the Coroner and then seeking to recover for those acts against Copeland individually."

## V. Beaufort County is Not Liable for the Acts or Omissions of Copeland Officially

 The negligence claim against Beaufort County for Copeland's failure to perform a toxicology test in his official capacity and the claim of negligent supervision and training were properly dismissed because Copeland owed no duty to the Trasks arising from his official actions or inactions in this case. Beaufort County cannot be vicariously liable for Copeland's conduct because Copeland is not liable. "If no duty exists, the defendant is entitled to judgment as a matter of law." *Chastain*, 381 S.C. at 519, 673 S.E.2d at 832. Therefore, we need not reach the issue of whether Beaufort County has control over the coroner. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing that an appellate court need not address remaining issues when resolution of one issue is dispositive).

## VI. Conclusion

In this case, much of the coroner's conduct is troubling, but none of it is actionable. Because we find the statutes at issue do not give rise to private rights of action, because South Carolina has not recognized the tort of third party spoliation of evidence, and because the Trasks fail to state a claim for intentional infliction of emotional distress, we find the circuit court was correct in granting summary judgment.

**AFFIRMED.**

HUFF and GEATHERS, JJ., concur.