# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Renee Hale Shelley, as Personal Representative of the Estate of Michael Mann Lindler, Appellant/Respondent,

v.

South Carolina Highway Patrol, Respondent/Appellant.

Appellate Case No. 2016-002168

_____

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

_____

Opinion No. 5781
Heard March 13, 2019 – Filed October 28, 2020

_____

**AFFIRMED**

_____

C. Carter Elliot, Jr., Lauren Knight Slocum, and Andrew William Kunz, all of Elliot, Phelan & Kunz LLC, of Georgetown, for Appellant/Respondent.

Andrew F. Lindemann, of Lindemann & Davis, P.A., and Joel Steve Hughes, of The Law Office of Kenneth E. Berger, LLC, both of Columbia, for Respondent/Appellant.

_____

**WILLIAMS, J.:** In this civil action, Renee Hale Shelley, as Personal Representative of the Estate of Michael Mann Lindler (the Estate), appeals the trial court's order granting the South Carolina Highway Patrol's (the Highway Patrol) motion for a directed verdict. On appeal, the Estate argues the trial court erred in (1) granting the Highway Patrol immunity from liability under the South Carolina

Tort Claims Act (the Act)[1] pursuant to subsection 15-78-60(4) of the South Carolina Code; (2) granting the Highway Patrol immunity from liability under subsection 15-78-60(6) of the Act; and (3) finding the custodial immunity in subsection 15-78-60(25) of the Act—which includes a gross negligence exception—did not apply under the facts of this case. The Highway Patrol cross-appeals, arguing the trial court erred in denying the Highway Patrol discretionary immunity from the Estate's claims under subsection 15-78-60(5) of the Act. We affirm.

## FACTS/PROCEDURAL HISTORY

On December 17, 2012, South Carolina Highway Patrol Trooper Travis Blackwelder stopped to assist nineteen-year-old Lindler, a disabled motorist. Blackwelder's dash-cam and on-person microphone captured his entire encounter with Lindler. Therefore, a majority of the tragic facts of this case are not in dispute.

Lindler and his girlfriend were traveling westbound on Interstate 20 when his vehicle became disabled. When Blackwelder arrived shortly before 5:00 P.M., Lindler's truck was disabled in the right-hand lane of the interstate. Blackwelder interacted with Lindler and his girlfriend for approximately fourteen minutes. Lindler provided confusing and sometimes contradictory answers to Blackwelder's questions regarding (1) Lindler's vehicle, (2) where Lindler and his girlfriend were coming from and going to, and (3) whether Lindler had taken any medication and what type he took. Lindler also stumbled multiple times, and Blackwelder repeatedly asked him why he was stumbling and if he was all right. Lindler answered he was, providing multiple excuses as to why he was stumbling. Lindler was able to move his vehicle onto the grass beside the roadway. While Blackwelder was in his car relaying Lindler's driver's license number to dispatch, Lindler exited his vehicle, stood in the open doorway of his driver's side door at the edge of the highway, and smoked a cigarette. Blackwelder used his public address system to instruct Lindler to get out of the roadway. Lindler instead approached Blackwelder's patrol car, and Blackwelder repeated his instruction. Lindler apologized and moved to the grass on the right side of the interstate. Blackwelder exited his vehicle and asked Lindler to recite the alphabet, which Lindler did successfully. When Blackwelder repeatedly asked Lindler if he was under the influence of drugs or alcohol, Lindler expressed confidence that he would pass any field test Blackwelder administered. After questioning Lindler further and

---

[1] S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2019).

confirming Lindler had assistance on the way, Blackwelder left to respond to another accident.  Approximately forty-two minutes after Blackwelder left the scene, Lindler was struck and killed.  A witness testified Lindler was "darting in and out of traffic" before he was hit.  The toxicology tests determined Lindler had Methadone and Alprazolam in his system at the time of his death.

On July 11, 2014, the Estate initiated this lawsuit against the Highway Patrol, alleging survivorship and wrongful death causes of action.[2]  The complaint alleged Blackwelder was grossly negligent in leaving an "obviously impaired" Lindler on the side of the road after Lindler moved his truck out of the roadway and the Highway Patrol—through Blackwelder—failed to protect Lindler from harm.  The complaint also alleged the Highway Patrol failed to terminate Blackwelder despite previous internal policy violations.  The Highway Patrol raised multiple defenses in its answer, including the affirmative defense of immunity under the Act.

After both parties presented their cases, the Highway Patrol made multiple renewed motions for a directed verdict.  Under one motion, the Highway Patrol argued it was immune from liability under subsections 15-78-60(4), (5), and (6) of the Act.[3]  The trial court denied the Highway Patrol's motion as to subsection 15-78-60(5), finding the issue of whether Blackwelder weighed alternatives was a factual question that should go to the jury.  However, the trial court orally granted the Highway Patrol's renewed motions for a directed verdict as to subsections 15-78-60(4) and 15-78-60(6).

In the written order that followed, the trial court found the Estate's claims that Blackwelder failed to properly follow Highway Patrol policy and that the Highway

---

[2] The Estate also brought a federal substantive due process claim against Blackwelder.  *See Shelley v. Blackwelder*, Civil Action Number 3:15-4989-JFA.  United States District Judge Joseph F. Anderson, Jr. granted summary judgment in favor of the Highway Patrol as to that claim on January 17, 2017.

[3] Section 15-78-60 provides "[t]he governmental entity is not liable for a loss resulting from: . . . (4) adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies; (5) the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee; (6) civil disobedience, riot, insurrection, or rebellion or the failure to provide the method of providing police or fire protection . . . ."

Patrol failed to terminate Blackwelder for his previous failure to follow policy were failures to enforce the Highway Patrol's policies. Thus, the trial court found the Highway Patrol would not be liable under subsection 15-78-60(4). Under subsection 15-78-60(6), the trial court found "[the Estate's] claims, collectively, essentially [are] a 'failure to protect' claim. [The Estate's] claims are derivative of the notion that Blackwelder should have protected Lindler from harm." Therefore, the trial court concluded the Estate's failure to protect claims were barred under subsection 15-78-60(6) because they dealt with "methods of protection." The Estate filed a motion to reconsider, which the trial court denied. These cross-appeals followed.

**ISSUE ON APPEAL**

Did the trial court err in granting the Highway Patrol immunity under the Act?[4]

**STANDARD OF REVIEW**

"In ruling on a motion for directed verdict . . . a court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party." *Clark v. S.C. Dep't of Pub. Safety*, 362 S.C. 377, 382, 608 S.E.2d 573, 576 (2005). "The trial court must deny the motion[] when the evidence yields more than one inference or its inference is in doubt." *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). "This [c]ourt will reverse the trial court's ruling on a directed verdict motion only whe[n] there is no evidence to support the ruling or whe[n] the ruling is controlled by an error of law." *Clark*, 362 S.C. at 382–83, 608 S.E.2d at 576.

**LAW/ANALYSIS**

---

[4] The Highway Patrol's cross-appeal argues the trial court erred in finding a jury question existed as to subsection 15-78-60(5). The Highway Patrol raised subsection 15-78-60(5) as an immunity to the Estate's "failure to protect" claims. Because we affirm the trial court's decision providing the Highway Patrol immunity from those claims under subsection 15-78-60(6), we need not address the argument in the Highway Patrol's cross-appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding the appellate court need not address remaining issues when the resolution of a prior issue is dispositive).

On appeal, the Estate argues the trial court erred in finding (1) the Highway Patrol was entitled to immunity under subsection 15-78-60(4) because the trial court incorrectly found the Estate's allegations of policy violations fell within the confines of subsection 15-78-60(4); (2) the Highway Patrol was entitled to immunity under subsection 15-78-60(6) because the trial court incorrectly found the Estate's claims were essentially failure to protect claims; and (3) custodial liability under subsection 15-78-60(25) did not apply based on the facts of this case.[5]  Because we find resolution of the second argument dispositive, we address only that argument.  *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (finding the appellate court need not address remaining issues when the resolution of a prior issue is dispositive).

The Estate argues the trial court erred in granting the Highway Patrol's motion for a directed verdict pursuant to subsection 15-78-60(6), contending the Act does not grant the police immunity for any act that can be characterized as "police protection."  We disagree.

The South Carolina Supreme Court abolished the common law doctrine of sovereign immunity in *McCall by Andrews v. Batson*, 285 S.C. 243, 246–47, 329 S.E.2d 741, 742–43 (1985).  In response, the legislature passed the Act, which removed the cloak of immunity that protected the state and its political subdivisions from tort liability.[6] *Wells v. City of Lynchburg*, 331 S.C. 296, 302, 501 S.E.2d 746, 749 (Ct. App. 1998).  However, the Act's general waiver of immunity is not an "infinite blue sky" of limitless liability.  *Nguyen v. State*, 788 P.2d 962, 964 (Okla. 1990) (interpreting comparable legislation in Oklahoma).  The legislature limited the scope of governmental entities' liability through forty carefully crafted exceptions in section 15-78-60 of the Act.  "The burden of establishing an exception to the waiver of immunity is on the governmental entity asserting the [exception as a] defense."  *Clark*, 362 S.C. at 386, 608 S.E.2d at 578.

---

[5]  In its reply brief, the Estate abandoned its argument on the third issue, stating, "[The Estate] concedes there is no path forward on this theory of liability."

[6] "[The Act] is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents"; however, "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  S.C. Code Ann. §§ 15-78-20(b) & 15-78-70(b) (2005).

One of these exceptions, subsection (6), provides a governmental entity is not liable for losses resulting from "civil disobedience, riot, insurrection, or rebellion or *the failure to provide the method of providing police or fire protection*." § 15-78-60(6) (emphasis added).  We are required to construe these exceptions liberally in favor of limiting the Highway Patrol's liability.  *See* S.C. Code Ann. § 15-78-20(f) (2005) ("The provisions of this chapter establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the State.").

In *Wells*, this court addressed whether subsection 15-78-60(6) provided a county and a city immunity from liability from claims that they failed to maintain an adequate system of operative fire hydrants.  331 S.C. at 303–05, 501 S.E.2d at 750–51.  This court determined that subsection 15-78-60(6) contained a scrivener's error; it was missing the conjunctive "or" between "the failure to provide" and "the method of providing police or fire protection."  *Id.* at 303–04, 501 S.E.2d at 750.  Based on *Wells*, the correct version of the statute reads, "civil disobedience, riot, insurrection, or rebellion or the failure to provide *or* the method of providing police or fire protection."  *Id.*  This court ultimately determined subsection 15-78-60(6) immunized the county and the city from the negligence claim.  *Id.* at 304–05, 501 S.E.2d at 750–51.  In reaching this conclusion, this court relied on reasoning from the Oklahoma Supreme Court in *Shockey v. City of Oklahoma City*, 632 P.2d 406 (Okla. 1981).  *Wells*, 331 S.C. at 304–05, 501 S.E.2d at 750–51.  In *Shockey*, the Oklahoma Supreme Court found Okla. Stat. tit. 51, § 155(6) (2018) gave a city immunity from a lawsuit that alleged the city failed to regularly check its fire hydrants to ensure proper operation in the event of a fire.  632 P.2d at 408.  The *Shockey* court found, "[S]upplying water to fire hydrants was just a part of [the city's] overall operation in providing fire protection.  Assuming, arguendo, [the city] negligently failed to employ the proper methods in checking its water service for the proper operation of its fire hydrants, [section] 155(6) clearly exempts it from liability."  *Id.*  In *Wells*, this court agreed with the Oklahoma court in *Shockey* and held subsection 15-78-60(6) barred the appellant's claim that the city failed to maintain an adequate system of operative fire hydrants.  331 S.C. at 305, 501 S.E.2d at 751.

This court again analyzed subsection 15-78-60(6) in *Huggins v. Metts*, 371 S.C. 621, 640 S.E.2d 465 (Ct. App. 2006).  In that case, police approached a man carrying two large knives in the woods behind the man's residence.  *Id.* at 622, 640 S.E.2d at 465.  Police first brought in a negotiator to speak with the man, but he was not receptive.  *Id.* at 622, 640 S.E.2d at 465–66.  Police then radioed for a taser

to subdue the man, but the man stated "you're not going to tase me," and he approached the officers. *Id.* at 622, 640 S.E.2d at 466. Police warned the man they would shoot if he came closer, but the man, still armed with the knives, continued to approach the officers. *Id.* at 622–23, 640 S.E.2d at 466. Police ultimately discharged their firearms and killed the man. *Id.* at 623, 640 S.E.2d at 466. The man's estate brought a negligence action against the police. *Id.* at 624, 640 S.E.2d at 466. This court affirmed the trial court's decision to grant summary judgment by finding the police immune from liability under subsection 15-78-60(6). *Id.* at 624–25, 640 S.E.2d at 466–67. This court found "[t]his action concerns the manner in which the police chose to provide police protection." *Id.* at 624, 640 S.E.2d at 467. This court determined subsection 15-78-60(6) of the Act specifically exempts the police from liability concerning the methods that they choose to utilize to provide police protection. *Id.*

In this case, the trial court found the Estate's claims were "essentially . . . failure to protect claim[s]." The trial court stated "[the Estate]'s claims are derivative of the notion that Blackwelder should have protected Lindler from harm." Therefore, the trial court concluded that to the extent the Estate claimed Lindler should have been protected, such claims fell under police protection and the Highway Patrol was immune from such claims under subsection 15-78-60(6).

We agree with the trial court. The Estate's allegations in paragraph fourteen of its complaint reference a failure to protect Lindler. For example, section (e) specifically alleges negligence "in consciously failing to protect [Lindler]"; section (u) alleges negligence "in consciously failing to take the appropriate action to safeguard [Lindler]"; and section (v) specifically alleges negligence "in consciously failing to place [Lindler] into protective custody." Additionally, the Estate's policy violation claims—which the trial court held were precluded by subsection (4)—are, in actuality, failure to protect claims because they are "completely intertwined" with Blackwelder's failure to protect Lindler. *Cf. Adkins v. Varn*, 312 S.C. 188, 192, 439 S.E.2d 822, 824–25 (1993) (examining the "gravamen" of the complaint and stating that the acts alleged in the complaint were "completely intertwined" with a subsection providing immunity). The Estate claimed that Blackwelder and the Highway Patrol failed to comply with Section XI of Policy 300.14—titled "Highway Assistance"—which provides "[o]fficers shall ensure the *protection* of stranded persons . . . ." (emphasis added). As to the Estate's claim that the Highway Patrol failed to terminate Blackwelder despite a history of policy violations, this too is a failure to protect claim because it asserts that had Blackwelder been terminated, he would not have responded to the scene

and left Lindler unprotected.  Therefore, we find the Estate's claims are barred by subsection 15-78-60(6).

On appeal, the Estate seeks for this court to limit the application of subsection 15-78-60(6) to only those situations when negligence is based on an entity "formulating a policy," not situations when "an officer acts negligently in carrying out that policy."  Our courts have never limited the application of subsection 15-78-60(6), and we decline to do so here.  *See, e.g.*, *Huggins*, 371 S.C. at 622–24, 640 S.E.2d at 465–67 (finding subsection (6) exception to liability applied to police officers' response to an armed and belligerent assailant).  Moreover, our supreme court expressly refused to recognize a distinction between "planning and operational activities" in *Clark*, stating, "The [South Carolina Department of Public Safety] contends the Court of Appeals created a distinction between planning and operational activities in determining [the officer]'s conduct was not subject to discretionary immunity.  We decline at this time and under the facts of this case to recognize such a distinction."[7]  362 S.C. at 387 n.3, 608 S.E.2d at 579 n.3.

We also reject any notion that subsection 15-78-60(6) provides the police with "blanket immunity."  In passing the Act, the General Assembly recognized the "potential problems and hardships each governmental entity may face being subjected to unlimited and unqualified liability for its actions."  S.C. Code Ann. § 15-78-20(a) (2005).  However, through the Act, the General Assembly expressly refused to provide immunity to employees of governmental entities whose conduct (1) is not within the scope of their official duties or (2) constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.  S.C. Code Ann. § 15-78-70(b) (2005).  Therefore, police officers whose conduct is outside the scope of their official duties or constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude are liable for their torts "in the same manner and to the same extent as a private individual under like circumstances" without any immunity from the Act.  S.C. Code Ann. § 15-78-40 (2005); *see* § 15-78-70(b).

**CONCLUSION**

Based on the foregoing analysis, we find the trial court properly found the Estate's claims were precluded by subsection 15-78-60(6), and we **AFFIRM** the trial court's order granting the Highway Patrol's motion for a directed verdict.

---

[7] In *Clark*, our supreme court evaluated discretionary immunity under subsection 15-78-60(5).  *See* 362 S.C. at 386–87, 608 S.E.2d at 578–79.

**GEATHERS and HILL, JJ., concur.**